**SECOND DIVISION**
**BARNES, P. J.,**
**ADAMS and MCFADDEN, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)**
**http://www.gaappeals.us/rules/**

**June 22, 2012**

# In the Court of Appeals of Georgia

A12A0097. WEST v. DOOLY COUNTY SCHOOL DISTRICT ET AL.

MCFADDEN, Judge.

Bobby West filed this action under 42 USC § 1983, seeking damages for the defendants' failure to comply with the Georgia Fair Dismissal Act, OCGA § 20-2-940 et seq., when they did not renew his employment contract. He argues that he was a tenured employee of the Dooly County School District and therefore was entitled to due process and the protections of the Fair Dismissal Act before the superintendent decided not to renew his contract. We find that West had not obtained tenure before the legislature abolished it for administrators such as West. We therefore affirm the trial court's grant of summary judgment to the defendants.

West worked for the Twiggs County School District from 1989 until 1994, first as a teacher for six months and then as an assistant principal. In 1994, he began working as a principal in the Dooly County School District for the 1994-1995 school year. West eventually became the assistant superintendent for facilities, transportation and student services, and management. In April 2007, the then-superintendent, John Bembry, informed West that his contract as assistant superintendent would not be renewed. West filed this action against Bembry, the school district, the members of the board of education and others. He now appeals the trial court's grant of summary judgment to the defendants.

We conduct a de novo review of the trial court's ruling on summary judgment, viewing the evidence and all reasonable inferences and conclusions drawn from it in a light favorable to the nonmoving party. Summary judgment is appropriate when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. A defendant is entitled to summary judgment if it can demonstrate that there is no evidence to create a jury issue on at least one essential element of the plaintiff's case. A defendant need not affirmatively disprove the plaintiff's case, but may prevail simply by pointing to the lack of evidence. If the defendant does so, the plaintiff cannot rest on his pleadings, but must point to specific evidence that gives rise to a triable issue of fact.

(Citations and punctuation omitted.) *Latimore v. City of Atlanta*, 289 Ga. App. 85 (656 SE2d 222) (2008).

1.     West's due process claims fail unless he has a protected property interest in his employment. See *Thomas v. Lee*, 286 Ga. 860, 861 (691 SE2d 845) (2010); *Dixon v. MARTA*, 242 Ga. App. 262, 264 (1) (529 SE2d 398) (2000). "A party is not entitled to procedural due process where the interest which would be impaired by governmental action does not involve that party's protectible interest in life, liberty, or property." *Atkinson v. Roswell*, 203 Ga. App. 192, 196 (4) (416 SE2d 550) (1992). "State law determines whether a public employee has a property interest in his or her job," (citation omitted) *Thomas*, 286 Ga. at 861, and defines the dimensions of such interest. *Dixon*, 242 Ga. App. at 264 (1). Consequently, we must look to Georgia law to determine whether West had a property interest in his job.

The state law applicable to West's claims is the Fair Dismissal Act, OCGA §§ 20-2-940 through 20-2-947. Under the Act,

> certain professional employees of a school district are afforded special procedural rights, commonly referred to as "tenure rights," when the school district decides not to renew their annual employment contract for a subsequent school year. These procedural rights include the right, upon timely written request by the school employee, to receive written notice of the reasons for the nonrenewal, and the right to a hearing

3

before the local board of education to contest those reasons. OCGA §§ 20-2-940 (b), (e); 20-2-942 (b) (2). The written notice received by the school employee also must contain specific information informing the employee of his or her procedural rights. OCGA § 20-2-942 (b) (2).

(Citation omitted.) *Patrick v. Huff*, 296 Ga. App. 343, 345 (1) (674 SE2d 398) (2009).

The case involves the application of the 1995 amendments to the Act.

Prior to April 7, 1995, a "teacher" was defined broadly under the [Fair Dismissal Act] to include school administrators like high school principals. See OCGA § 20-2-942 (a) (4) (1994). Significantly, however, the General Assembly amended the [Fair Dismissal Act] as of that date to exclude school administrators from the definition of "teacher." See Ga. L. 1995, p. 304, §§ 1-2. Hence, the general rule under the current version of the [Fair Dismissal Act] is that school employees who became school administrators on or after April 7, 1995 are not entitled to the procedural rights afforded teachers with respect to the nonrenewal of their employment contracts. See OCGA § 20-2-942 (c) (1).

*Patrick*, 296 Ga. App. at 345-346 (1). However, "the General Assembly sought to preserve the expectations of school employees who had obtained procedural rights under the [Act] before the statutory scheme excluded school administrators. Accordingly, the General Assembly included a 'grandfather' clause in the [Act]." *Patrick*, 296 Ga. App. at 346 (1). With some conditions, administrators who had

4

obtained such Fair Dismissal Act procedural rights before April 7, 1995, would retain them. See Ga. L. 1995, p. 304-305, § 3. OCGA § 20-2-942 (c) (1) provides:

> A person who first becomes a school administrator on or after April 7, 1995, shall not acquire any rights under this Code section to continued employment with respect to any position of school administrator. A school administrator who had acquired any rights to continued employment under this Code section prior to April 7, 1995, shall retain such rights: (A) In that administrative position which such administrator held immediately prior to such date; and (B) In any other administrative position to which such administrator has been involuntarily transferred or assigned, and only in such positions shall such administrator be deemed to be a teacher for the purpose of retaining those rights to continued employment in such administrative positions.

The key, then, to determining whether West had a property interest in his employment is to determine whether West obtained "any rights to continued employment . . . prior to April 7, 1995."

(a) West did not obtain tenure rights before April 7, 1995. Although he may have acquired tenure rights when he worked as an administrator in Twiggs County by virtue of the length of his employment there, he left that county to begin working in Dooly County, another school system. OCGA § 20-2-942 (b) (4) provides that a teacher (or pre-April 7, 1995 administrator) who had obtained rights under the Act

5

by working for a particular school system, who was subsequently employed by another school system, and "who accept[ed] a second consecutive school year contract from the local board at which the teacher [was] subsequently employed" is entitled to retain those rights. See also *Dorsey v. Atlanta Bd. of Ed.*, 255 Ga. App. 104, 105 (1) (564 SE2d 509) (2002). Consequently, the exact date that West accepted his second contract of employment as an administrator with the Dooly County School District, the contract for the 1995-1996 school year, is important. West, an administrator, was considered a teacher under the Act until April 7, 1995, and obtained rights under the Act by working for the Twiggs County school system. He was subsequently employed by the Dooly County school system and had accepted his second-year contract in the spring of 1995. If he had accepted that contract before April 7, 1995, he would have been entitled to retain those rights, with some conditions. OCGA § 20-2-942 (c) (1).

West testified that he was not sure of the date he accepted the second contract with Dooly County. He does not have a copy of the contract. The school district does not have a copy of the contract, either, because it shredded the 1979 through 1998 personnel records in its possession. However, Bembry testified that West did not accept the contract prior to April 7, 1995. He testified that the board recognized that

6

West had not signed the contract in time because it attempted to grant him tenure at the board meeting in 1996, albeit unsuccessfully as discussed in Division 6 below.

The defendants presented contracts of three other administrators from the 1995-1996 school year, copies of which they obtained from the school district's attorney or the administrators themselves, and all showed that these administrators were offered their contracts on April 28, 1995. The defendants also presented the affidavit of the school district's business manager from the period, who testified that in the normal course of her business, she would print and offer the employment contracts to all administrators on the same date. She testified that, based on the date of the three other administrators' contracts, she could "state with reasonable certainty" that West was not offered his contract before April 7, 1995. Although West presented evidence that in past years contracts had been issued before April 7, he did not rebut the testimony that contracts were issued to all administrators on the same day each year.

Because West came forward with no specific evidence showing that he accepted his second-year contract prior to April 7, 1995, he has not shown that he obtained tenure rights and he does not fall within the grandfather clause. The trial court properly granted the defendants summary judgment on this ground. *Latimore*, 289 Ga. App. at 85.

(b)    Nor did West have a protected expectation interest in prospective tenure. In *Board of Regents of State Colleges v. Roth*, 408 U. S. 564 (92 SC 2701, 33 LE2d 548) (1972), the United States Supreme Court held that a nontenured teacher did not have a property interest in his job sufficient to have reasons stated for his nonrenewal. The court explained that "[t]o have a property interest in a benefit, a person clearly must have more than an abstract need or desire" and "more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." Id. at 577 (III). And, as discussed above, state law determines the dimensions of any property interest in a public job. *Dixon*, 242 Ga. App. at 264 (1). See also, *Roth*, 408 U. S. at 577 (III) (holding that property interests "are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law -- rules or understandings that secure certain benefits and that support claims of entitlement to those benefits").

The grandfather clause in the Fair Dismissal Act provides that a school administrator who had acquired any rights to continued employment under the Act prior to April 7, 1995, shall retain them. OCGA § 20-2-942 (c) (1). But it does not define the meaning of the phrase "any rights to continued employment." Indeed, the only rights defined by the Act are the procedural rights to which a tenured employee

8

is entitled: limited grounds for termination, notice and a hearing. OCGA § 20-2-940. Since the only rights described by the Act are the rights incident to tenure, we conclude that the only rights West could possibly claim under the Act are tenure rights. And, as discussed above, West has not obtained tenure rights. "[West] surely had an abstract concern in being rehired, but he did not have a *property* interest sufficient to require the [defendant] authorities to give him a hearing when they declined to renew his contract of employment." (Emphasis in original) *Roth*, 408 U. S. at 578 (III).

Although we have never addressed before whether a school employee has a property right in prospective tenure, the United States District Court for the Middle District of Georgia has addressed the issue. In *Johnson v. Bibb Co. Bd. of Ed.*, 2009 U. S. Dist. LEXIS 54759 (III) (B) (M.D. Ga. June 29, 2009), the court held that because an administrator had not obtained tenure, she had no property interest in her employment protected by due process and thus no right to the renewal of her employment contract or to a hearing before the nonrenewal. See *Lawyer v. Bd. of Trustees at Univ. of South Ala.*, 1991 U.S. Dist. LEXIS 7662 (S.D. Ala. June 6, 1991) (holding that plaintiff who had "at most a prospective interest in a tenured appointment which he did not receive" did not have the right to "a legitimate

9

opportunity to contest the deprivation of any property rights as the result of [his] termination by a university"). See also *Dorsey*, 255 Ga. App. at 106 (1) (finding that plaintiff was not entitled to notice and a hearing prior to the nonrenewal of his contract because he had not obtained tenure); *Ellison v. DeKalb Co.*, 236 Ga. App. 185, 187 (2) (511 SE2d 284) (1999) (holding there is no property right to be considered for promotion); *Cohilas v. Clayton Co. Bd. of Commrs.*, 206 Ga. App. 134, 136 (3) (424 SE2d 651) (1992) (holding there is no property right in a prospective promotion).

In *Patrick*, 296 Ga. App. 343, we construed one provision of the Fair Dismissal Act's grandfather clause that is analogous to the provision at issue here. There, we were concerned with OCGA § 20-2-942 (c) (2), which grandfathers in tenured teachers who become administrators after April 7, 1995, and provides that:

> A teacher who had acquired *any rights to continued employment* under this Code section prior to April 7, 1995, and who is or becomes a school administrator without any break in employment with the local board for which the person had been a teacher shall retain those rights under this Code section to continued employment in the position as teacher with such local board.

(Emphasis supplied.) Here we are concerned with OCGA § 20-2-942 (c) (1), which grandfathers in tenured administrators and utilizes the same language, providing in part that, "[a] school administrator who had acquired *any rights to continued employment* under this Code section prior to April 7, 1995, shall retain such rights. . . ." (Emphasis supplied.)

In *Patrick*, we construed the phrase, "teacher who had acquired *any rights to continued employment* under this Code section prior to April 7, 1995, and who is or becomes a school administrator without any break in employment," to preserve, "[b]y its plain and unambiguous terms," the rights of "a teacher who obtained *tenure rights* prior to April 7, 1995 and after that date accepted a school administrator position with the same local board of education. . . ." (Emphasis supplied.) *Patrick*, 296 Ga. App. at 346 (1). Although we did not address in isolation the phrase "any rights to continued employment," we assumed the phrase meant tenure. Under these authorities, the phrase in the Fair Dismissal Act that "[a] school administrator who had acquired *any rights to continued employment* . . . prior to April 7, 1995," retains those rights means a school administrator who had acquired *tenure rights* before April 7, 1995.

11

2.    West cites *Hall v. Nelson*, 282 Ga. 441 (651 SE2d 72) (2007), for the proposition that because he was an administrator prior to April 7, 1995, and because he had obtained administrative tenure in Twiggs County, he retained the right to continued employment in Dooly County as a principal or assistant principal. *Hall* is factually distinguishable; it did not involve the issue of whether an educator who transferred from one school system to another is entitled to protection under the Fair Dismissal Act.

3.    West's argument that he is entitled to Fair Dismissal Act rights under OCGA § 20-2-942 (c) (2), the provision at issue in *Patrick*, supra, 296 Ga. App. 343, is also unavailing. That provision does not apply to West because he obtained his tenure with Twiggs County and then moved to the Dooly County school system, so, like the plaintiff in *Patrick*, he had a break in employment with the local board of education with which he obtained tenure rights. "[T]here can be no break in employment with the local board with which the teacher originally obtained tenure rights prior to April 7, 1995." *Patrick*, 296 Ga. App. 343 at 347 (1).

4.    West argues that regardless of when he accepted his second-year contract, upon its acceptance he obtained tenure as a teacher, even if the acceptance was too late to obtain tenure as an administrator. This argument ignores the fact that

12

the General Assembly amended the Fair Dismissal Act as of April 7, 1995, to expressly distinguish between school administrators and teachers. *Patrick*, 296 Ga. App. at 345-346 (1). It is undisputed that West was an administrator in April 1995 at the time he accepted his second-year contract. Because under the amended Fair Dismissal Act teachers and administrators no longer acquire the same rights, West's acceptance of the second-year contract – when he was an administrator – did not gain him teacher tenure.

5.     West argues that he obtained tenure under a district policy that provides, "[t]enured teachers who accept promotion to administrative positions retain tenure as a teacher as provided by Georgia law." Because, as discussed above, West did not have teacher tenure in Dooly County, this policy does not apply to him.

6.     West argues that even if he did not obtain Fair Dismissal Act rights by accepting his second-year contract prior to April 7, 1995, he obtained them when the school board voted to grant him tenure on March 14, 1996. But the board's vote to grant him tenure was insufficient under the controlling statute.

When the General Assembly removed administrators from the protections of the tenure law, it added a provision to allow local boards of education to adopt tenure policies for administrators. Ga. L. 1995, p. 305 § 3. It also repealed all conflicting

13

law. Id at § 6. OCGA § 20-2-942 (c) (4), which became effective April 7, 1995, provides:

> Notwithstanding the other provisions of this subsection, a local board of education may, as part of its personnel policies, adopt or modify a tenure policy which may include the same policies and procedures for the nonrenewal of contracts for any class or category of school administrators that exist for the nonrenewal of contracts for teachers as set forth in this Code section. Before any adoption or modification of a tenure policy, the local board shall hold a public hearing after at least 30 days' notice published in the local legal organ.

"[A] county board of education is a political body and has no power other than that conferred by statutory authority." *Dodd v. Bd. of Ed., ,* 46 Ga. App. 235 (167 SE 319) (1933). See generally *Davis v. Griffin-Spalding Co. Bd. of Ed.*, 445 F. Supp. 1048, 1051 (N.D. Ga. 1975). "Powers of all public officers are defined by law and all persons must take notice thereof. The public may not be estopped by the acts of any officer done in the exercise of an unconferred power." OCGA § 45-6-5. At the time the board voted to grant West tenure, OCGA § 20-2-942 (c) (4) established the procedures the board had to follow to do so, as any previous law granting such authority had been repealed.

14

The defendants presented the affidavit of Verlin Jones, a defendant who has been a member of the Dooly County Board of Education continuously since December 1994, and was its counsel from 1977 until 1990. Jones testified that at no time from January 1995 until October 31, 2000, did the board adopt or modify a policy to grant tenure to administrators on a case-by-case basis. Jones also testified that his review of the county's legal organ from January 1995 through March 1996, when the vote to grant tenure to West was taken, showed there had been no publication of notice of a public hearing to adopt such a policy. This evidence demonstrated that the board did not follow the law that conferred upon it the power to establish tenure policies for administrators. West presented no evidence to the contrary. Consequently, because the only evidence is that the board did not follow the statutory procedure to grant West tenure, the vote of the board was not effective, and the trial court did not err in granting the defendants summary judgment on this ground.

> The cardinal rule of statutory construction requires this Court to look diligently for the intention of the General Assembly, and the golden rule of statutory construction requires us to follow the literal language of the statute unless it produces contradiction, absurdity, or such an inconvenience as to insure that the legislature meant something else.

15

(Citation and punctuation omitted.) *Judicial Council v. Brown & Gallo, LLC,* 288 Ga. 294, 296-297 (702 SE2d 894) (2010). "The presumption is that [an act fixing the term or tenure of a public officer or an employee of a state agency] is not intended to create private contractual or vested rights but merely declares a policy to be pursued until the legislature shall ordain otherwise." *Dodge v. Bd. of Ed.*, 302 U. S. 74, 79 (58 SC 98, 82 LE 57) (1937). The clear intention of the General Assembly in amending the Fair Dismissal Act to exclude school administrators from the definition of teacher, was to end school administrators' entitlement to the procedural protections of the Act, except in certain, specifically defined circumstances. See Ga. L. 1995, p. 304, §§ 1-2. West does not fall within those specifically defined circumstances, and the trial court properly granted the defendants summary judgment.

*Judgment affirmed. Barnes, P. J., and Adams, J., concur.*