**THIRD DIVISION**
**ELLINGTON, P. J.,**
**DILLARD and MCFADDEN, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**July 14, 2015**

# In the Court of Appeals of Georgia

A15A0401, A15A0402. DAY v. FLOYD COUNTY BOARD OF   JE-020
    EDUCATION; and vice versa.

ELLINGTON, Presiding Judge.

Gilda Day's teaching contract with the Floyd County Board of Education, a/k/a the Floyd County School District ("the Local Board"), was not renewed following a system-wide reduction in force, a decision ultimately upheld by the Superior Court of Floyd County.[1] In Case No. A15A0401, Day appeals, arguing that the superior court erroneously interpreted Georgia law in reversing the decision of the Georgia Board of Education ("the State Board"). In Case No. A15A0402, the Local Board cross-appeals, contending that the State Board did not have jurisdiction to entertain Day's appeal from the Local Board's decision because the Local Board, as a charter

---

[1] This Court granted Day's application for a discretionary appeal. See OCGA § 5-6-35 (a) (1).

system, is not bound by the Fair Dismissal Act ("the FDA"), OCGA § 20-2-940 *et seq*. For the reasons that follow, we reverse the order of the superior court and remand with instruction.

The facts relevant to the appeal and the cross-appeal are the same. In 2007, Day was employed as a counselor at Coosa High School, which was part of the Floyd County school district. In 2010, the Floyd County school district became a charter system under the Charter Systems Act of 1998, OCGA § 20-2-2063.2.[2] The charter reflects that the Local Board was granted, pursuant to OCGA § 20-2-2065 (a), "the broad flexibility allowed by state law from the provisions of Title 20" of the Georgia Education Code. The charter did not expressly incorporate or allow for the incorporation of any of the provisions of the FDA and there is no evidence in the record that the charter was later amended to adopt any provision of the FDA. The charter did require, however, that each charter school within the system establish a Local School Governance Team ("LSGT") for the purpose of "maximizing school level decision making." The LSGTs are subject to the control and management of the Local Board.

---

[2] Ga. L. 2007, p. 185.

In 2013, the Local Board implemented a system-wide reduction in force ("RIF") of about 120 employees in response to decreased state funding and a projected deficit of $10 million for the 2013-2014 school year. The RIF plan was created by the school superintendent and implemented by a team comprised of the superintendent, the human resources director, and a data analyst. In deciding which employees to let go, the team first selected those with poor performance evaluations and those with "repeated performance concerns." Day was not in this initial group. Thereafter, the team grouped the remaining employees into categories based upon position (e.g. teachers, guidance counselors, etc.,) and status (e.g., tenured, non-tenured, and classified employees). The team then determined how many positions in each category it needed to operate the school system and then offered contracts for the 2013-2014 school year to employees with the most seniority in each position. The team determined that it could operate the system with 13 of its 24 guidance counselors. Because Day ranked 17th in terms of seniority, she was not offered one of the 13 positions.

By letter dated March 22, 2013, the school superintendent notified Day that her employment contract was not being renewed and, citing OCGA § 20-2-940 of the FDA, advised her that she was entitled to a hearing before the Local Board. Counsel

for the Local Board, however, took the position that charter systems are statutorily exempted from the FDA; nevertheless, the Local Board gave Day a hearing, which was held on May 10, 2013. Following the hearing, the Local Board voted to uphold the decision not to renew Day's employment contract.

Day appealed to the State Board, which reversed the Local Board. The State Board ruled that the Local Board was not exempt from the FDA. It concluded that the Local Board had adopted the procedures of the FDA and waived any exemption from the FDA by giving Day a hearing pursuant to the FDA. Next, the State Board found that the necessity of the RIF was supported by the evidence and that the Local Board identified appropriate factors (e.g. performance and length of service) for implementing the RIF. However, the State Board concluded that the Local Board had violated its charter by failing to involve the LSGTs in the system-wide RIF decision-making process. Because of this failure, the State Board characterized the Local Board's "actions as being arbitrary and capricious because the decision on who to RIF may have ended in a different result if the proper procedures had been followed."

The Local Board appealed to the superior court, and the superior court reversed the State Board in part. Although it affirmed those portions of the State Board's order holding that the necessity of the RIF was supported by the evidence and that the

Local Board identified appropriate factors in implementing the RIF, the superior court reversed that portion of the State Board's order holding that the Local Board had violated its charter by failing to involve the LSGTs in the RIF decision-making process. The superior court also rejected the Local Board's argument that the State Board lacked jurisdiction to hear Day's administrative appeal. Apparently assuming that the FDA did not apply to charter schools and charter systems, the superior court held that Day was "a previously tenured employee" and that a "mere legislative enactment" and the subsequent "execution of a Charter School Agreement to which she [was] not a party cannot take those rights from her[.]" Consequently, the court held that Day was entitled to "some form of due process" before her employment could be terminated. The superior court concluded that the State Board had appellate jurisdiction to consider whether Day had been afforded that due process.

In Case No. A15A0401, Day argues that (1) the Local Board is bound by the FDA, even though it is a charter system; and (2) the State Board had the authority to address the Local Board's alleged violation of its charter contract (i.e., its failure to involve the LSGTs in the RIF process). The Local Board argues, inter alia, that the superior court erred in finding that the State Board had subject matter jurisdiction to entertain Day's appeal. This argument also forms the first claim of error in the Local

5

Board's cross-appeal in Case No. A15A0402. For the reasons that follow, we hold that, under the circumstances presented here, the Floyd County charter system was exempt from the FDA and its administrative appeals process pursuant to the general waiver of OCGA § 20-2-2065 (a) and that, as a consequence, the State Board lacked subject matter jurisdiction to entertain Day's appeal. We therefore reverse the decision of the superior court and remand this case with instruction to reinstate the decision of the Local Board.

*Case No. A15A0401*

1. This Court has held that "an appellate court or tribunal only has the power to review a judgment or decision of a lower court or tribunal if it has jurisdiction over the appeal." (Footnote omitted.) *Clayton County Bd. of Ed. v. Wilmer*, 325 Ga. App. 637, 643 (1) (753 SE2d 459) (2014). See also *Fullwood v. Sivley*, 271 Ga. 248, 250-252 (517 SE2d 511) (1999) (Unless an appellate court has jurisdiction over a case, "it is without power or authority to render a judgment upon review.") (citation and punctuation omitted). As a threshold matter, we must address whether the State Board, as an appellate tribunal, had jurisdiction to entertain an administrative appeal from the Local Board's decision not to renew Day's employment contract. The State Board's authority to hear an appeal from the Local Board is found in OCGA § 20-2-

6

1160 (b) and provides that "[a]ny party aggrieved by a decision of the local board rendered on a contested issue after a hearing shall have the right to appeal therefrom to the State Board of Education." In this case, Day was not "aggrieved by a decision of the local board" because the FDA did not apply to her and she was given the benefit of a hearing and an administrative process to which she was not entitled.

Day proceeded in this case under the assumption that the FDA provided her with administrative remedies following the nonrenewal of her employment contract, even though her contract of employment was with a charter system. Charter schools and charter systems are governed by the Charter Schools Act of 1998. See OCGA § 20-2-2060 *et seq*. Under the Charter Schools Act, charter schools and charter systems are granted a general waiver exempting them from most state statutory and regulatory schemes that apply to non-charter public schools under Title 20, "Education." OCGA § 20-2-2065 (a) provides, in relevant part:

> *Except as provided in this article or in a charter*, a charter school, or for charter systems, each school within the system, *shall not be subject to the provisions of this title or any state or local rule, regulation, policy, or procedure relating to schools within an applicable school system regardless of whether such rule, regulation, policy, or procedure is established by the local board, the state board, or the Department of Education*; provided, however, that the state board may establish rules,

7

regulations, policies, or procedures consistent with this article relating to charter schools. A waiver granted pursuant to this Code section for a charter system shall apply to each system charter school within the system.

(Emphasis supplied.) Because FDA, OCGA §§ 20-2-940 through 20-2-948, is among the provisions of Title 20 generally waived, a charter system is not subject to the FDA unless the system's charter so provides or unless an exception to the general waiver contained within Title 20 applies. OCGA § 20-2-2065 (a). This is the plain and unambiguous import of the statute.[3] The Floyd County schools system's charter does not incorporate the FDA nor does it expressly allow for the promulgation of local rules or policies embracing the FDA. And none of the exceptions to OCGA § 20-2-2065 (a) listed in 20-2-2065 (b) expressly provide that charter schools shall be subject to the FDA. See OCGA § 20-2-2065 (b) (1) through (b) (13).

---

[3] "Where the language of a statute is plain and unambiguous, judicial construction is not only unnecessary but forbidden." (Citation omitted.) *Six Flags over Ga. II, L.P. v. Kull*, 276 Ga. 210, 211 (576 SE2d 880) (2003). In this regard, "under our system of separation of powers [the appellate courts do] not have the authority to rewrite statutes." *State v. Fielden*, 280 Ga. 444, 448 (629 SE2d 252) (2006). Additionally, the judicial branch "make[s] an independent determination as to whether [an] interpretation of the administrative agency correctly reflects the plain language of [a] statute and comports with the legislative intent." (Citation omitted.) *Sawnee Electric Membership Corp. v. Ga. Public Svc. Comm.*, 273 Ga. 702, 706 (544 SE2d 158) (2001).

Day argues, however, that the FDA is implicitly included within an exception to the broad waiver of OCGA § 20-2-2065 (a), citing OCGA § 20-2-2065 (b) (5). That subsection provides, in relevant part, that,

> [i]n determining whether to approve a charter petition or renew an existing charter, the local board and state board shall ensure that a charter school, or for charter systems, each school within the system, shall be: . . . [s]ubject to all federal, state, and local rules, regulations, court orders, and statutes relating to civil rights; insurance; the protection of the physical health and safety of school students, employees, and visitors; conflicting interest transactions; and the prevention of unlawful conduct[.]

Day contends that, as a tenured teacher, she is entitled to due process before she is deprived of her tenure, a vested property right, and that such due process is a "civil right." She argues, therefore, that FDA is among the "statutes relating to civil rights" referenced in OCGA § 20-2-2065 (b) (5) and that charter schools and charter systems are subject to the FDA. Day's argument, however, is founded on a faulty premise: She assumes that, having accepted employment with the Local Board after its conversion to a charter system, she retained the tenure to which she was previously entitled while employed with the Local Board when it was a non-charter system. But

9

any right Day has to continued employment derives from the FDA only,[4] and the General Assembly has provided that, absent a provision in the charter to the contrary, charter schools and charter systems *shall not be subject* to the FDA. See OCGA § 20-2-2065 (a). Having accepted employment with a charter system that was not subject to the FDA, Day had no tenure or right to continued employment with that charter system; consequently, she was not entitled to any of the procedural rights afforded to tenured employees under the FDA prior to the nonrenewal of her employment contract.[5] Because the FDA's due process provisions were inapplicable to the Floyd

---

[4] "The employment rights of public school employees in this state are statutory and are set forth in the FDA." (Citation omitted.) *DeKalb County School Dist. v. Butler*, 295 Ga. 672, 673 (1) (763 SE2d 473) (2014). "A tenured teacher is one who accepts a school year contract for the fourth consecutive school year from the same local board of education. OCGA § 20-2-942 (b) (1)." *Boone v. Atlanta Independent School System*, 275 Ga. App. 131, 132, n. 1 (619 SE2d 708) (2005). See also *West v. Dooly County School Dist.*, 316 Ga. App. 330, 331 (1) (729 SE2d 469) (2012) ("State law determines whether a public employee has a property interest in his or her job, and defines the dimensions of such interest.") (citations omitted).

[5] Whether OCGA § 20-2-2065 (a) is constitutional was not decided below, and it is not an issue that this Court may decide. With respect to constitutional issues, the Supreme Court of Georgia has exclusive jurisdiction over all cases involving construction of the Constitution of the State of Georgia and of the United States and all cases in which the constitutionality of a law, ordinance, or constitutional provision has been called into question. Ga. Const. of 1983, Art. VI, Sec. VI, Par. II (1).

County charter system, it plainly is not one of the "statutes relating to civil rights" referenced in OCGA § 20-2-2065 (b) (5).[6]

Because the Floyd County charter system is not subject to the FDA, Day was not entitled to any of the procedural rights and administrative remedies afforded to tenured, non-charter public school employees pursuant to the FDA. See *Patrick v. Huff*, 296 Ga. App. 343, 345-347 (1) (674 SE2d 398) (2009) (A public school employee is not entitled to the procedural rights and administrative remedies afforded by the FDA unless the employee is a covered employee within the ambit of the Act.). Because Day, as an employee of a charter system, was not entitled to the hearing and process that the Local Board gratuitously provided to her in connection with its

---

[6] Had we found any ambiguity in OCGA § 20-2-2065 (b), we would have recognized "that legislative exceptions in statutes are to be strictly construed and should be applied only so far as their language fairly warrants." (Citations and punctuation omitted.) *Sawnee Electric Membership Corp. v. Ga. Public Svc. Comm.*, 273 Ga. at 704. Given that the General Assembly expressly excepted certain provisions of Title 20 from the general waiver, it would have similarly expressly excepted the FDA from the general waiver had that been its intent. See OCGA §§ 20-2-2065 (b) (9) through 20-2-2065 (b) (13). We also note that, during the floor debate concerning the enactment of this Code section, a senator "stated a concern that teachers would not have the protections of fair dismissal under Title 20[.]" See Megan L. Iorior et al., Peach Sheets, Elementary and Secondary Education, 24 Ga. St. U. L. Rev. 121, 129 (2007). Further, in 2011, members of the General Assembly made an effort to amend OCGA § 20-2-2065 (b) by adding a subsection that made charter schools and charter systems subject to the FDA; however, that legislation died in committee. See Senate Bill 207, 151st Gen. Assem., Reg. Sess. (2001).

11

decision not to renew her employment contract,[7] she cannot be aggrieved by a decision of the Local Board affirming what it already had a right to do. Under such circumstances, there is no right to an appeal to the State Board. See OCGA § 20-2-1160 (b) ("Any party aggrieved by a decision of the local board rendered on a contested issue after a hearing shall have the right to appeal therefrom to the State Board of Education."). See also *Owen v. Long County Bd. of Ed.*, 245 Ga. 647, 649 (2) (266 SE2d 461) (1980) ("[O]nly the decisions of the county board made on disputed issues are appealable. If there has been no issue heard and decided by the county board, there can be no parties and no testimony which the law authorizing an appeal contemplates.") (citation omitted; decided under former Ga. Code Ann. § 32-910).

Consequently, we reverse the order of the superior court and remand the case to the superior court with instruction that it vacate the order of the State Board and reinstate the decision of the Local Board.

---

[7] We find no merit to the argument that the Local Board, in its capacity as a party, waived the inapplicability of the FDA by giving Day a hearing pursuant to the FDA. See *Jackson v. Gamble*, 232 Ga. 149, 152 (205 SE2d 256) (1974) (waiver or consent to jurisdiction cannot confer jurisdiction over the subject matter upon a tribunal).

12

2. Given our holding in Division 1 that the State Board had no authority to hear Day's appeal from the Local Board's decision not to renew her employment contract, her remaining claim of error concerning whether the State Board correctly determined that the Local Board failed to involve the LGSTs in the RIF process (an alleged violation of its charter) is moot.

*Case No. A15A0402*

3. For the reasons set forth in Division 1 of this opinion, the Local Board's cross-appeal is moot.

*Judgment reversed and case remanded with direction. McFadden, J., concurs and Dillard, J., concurs fully and specially.*

13

A15A0401. A15A0402. DAY v. FLOYD COUNTY BOARD OF

EDUCATION; and vise versa.

DILLARD, Judge, concurring fully and specially.

I agree with the majority's conclusion that Day was not entitled to the procedural rights and remedies afforded by the Fair Dismissal Act,[1] and I fully concur with the reasoning and analysis underlying that holding. Nevertheless, I write separately to express my disagreement with the inclusion of footnote 6 in the majority opinion. In that footnote, the majority discusses what we might have considered in ascertaining the General Assembly's "intent" *if* we had found an ambiguity in OCGA § 20-2-2065 (b). But because we expressly hold that this statutory provision is *not* ambiguous, such a discussion is mere dicta and entirely irrelevant to our holding.[2]

---

[1] *See* OCGA § 20-2-940 *et seq.*

[2] *See McLeod v. Clements*, ___ Ga. ___ (___ SE2d ___), 2015 WL 3936638, *3 (June 29, 2015) (explaining that statements and comments in an opinion concerning a legal proposition not necessarily involved with nor essential to the determination of an appeal are dicta and lack the force of an adjudication); *Little v. Fleet Finance*, 224 Ga. App. 498, 504 (481 SE2d 552) (1997) (same).

Moreover, footnote 6 of the majority opinion relies on the legislative history of Title 20 of the Official Code of Georgia, such as the floor debates and proposed legislation that never passed. Suffice it to say, I do not consider extratextual sources of this nature in interpreting statutes. As Justice Antonin Scalia has aptly noted, "legislative history [is] the equivalent of entering a crowded cocktail party and looking over the heads of guests for one's friends."[3] Thus, while I completely understand the majority's desire to reference legislative history in the case *sub judice* for contextual reasons, I wish to make it abundantly clear that I categorically reject relying on legislative history in interpreting the statutes passed by our General Assembly. Indeed, like Justice Scalia (and many other textualists), I am of the view that the "greatest defect of legislative history is its illegitimacy."[4] As Georgians (and Americans), we are "governed by laws, not by the intentions of legislators."[5] And as

---

[3] *Conroy v. Aniskoff*, 507 U.S. 511, 519 (113 SCt 1562, 123 LEd2d 229) (1993) (Scalia, J., concurring).

[4] *Id*.

[5] *Id.*

judges, we should only be concerned with what laws actually say,[6] "not by what the people who drafted the laws intended."[7]

That having been said, I commend the majority for its thoughtful and well-reasoned opinion, and I fully concur in same.

---

[6] *See Deal v. Coleman*, 294 Ga. 170, 172 (1) (a) (751 SE2d 337) (2013) ("To that end, we must afford the statutory text its plain and ordinary meaning." (punctuation omitted); *State v. Able*, 321 Ga. App. 632, 636 (742 SE2d 149) (2013) ("A judge is charged with interpreting the law in accordance with the original and/or plain meaning of the text at issue (and all that the text fairly implies). . . ."); ANTONIN SCALIA & BRYAN A. GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 16 (1st ed. 2012) ("Textualism, in its purest form, begins and ends with what the text says and fairly implies.").

[7] SCALIA & GARNER, *supra* note 6, at 375.