**FOURTH DIVISION**
**DILLARD, P. J.,**
**MERCIER and PINSON, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

***DEADLINES ARE NO LONGER TOLLED IN THIS COURT. ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.***

**October 25, 2021**

# In the Court of Appeals of Georgia

A21A1032. DEKALB COUNTY BOARD OF TAX ASSESSORS
v. BARRETT.

DILLARD, Presiding Judge.

The DeKalb County Board of Tax Assessors (the "Board") appeals the trial court's grant of summary judgment to Jimmy Barrett based on its finding that, under OCGA § 48-5-299 (c), he was entitled to a two-year freeze on the taxable values of his various properties for the 2019 and 2020 tax years. Specifically, the Board argues that the trial court erred because, in its view, Barrett was only entitled to such protection for 2018 and 2019. For the reasons set forth *infra*, we affirm.

Viewing the evidence in the light most favorable to the Board (*i.e.*, the nonmoving party),[1] the record shows that Barrett owns eight tracts of commercial real

---

[1] *See, e.g.*, *Martin v. Herrington Mill, LP*, 316 Ga. App. 696, 696 (730 SE2d 164) (2012).

estate in DeKalb County. In June 2017, Barrett received an annual notice of tax assessments from the Board for each of those properties. And while reviewing the notices, Barrett realized that the values given to his properties had substantially increased, so he appealed the 2017 assessments to the DeKalb County Board of Equalization under OCGA § 48-5-311 (e)[2] (the "BOE"). Ultimately, on April 10, 2018, after Barrett presented his appeal, he reached an agreement with the BOE, establishing the value of each property for the 2017 tax year.

Less than two months later, on June 1, 2018, Barrett received notices of assessment from the Board again, which increased all of the relevant property values for the 2018 taxable year. This surprised Barrett, given the agreement he had recently entered into with the BOE, but he initially thought the notices were likely the result of a "logistical mistake." But it turned out not to be an error, so he appealed the new, higher property valuations to the BOE. And following a hearing on the matter, the BOE ruled in Barrett's favor, finding that the property values established for the 2017

---

[2] *See* OCGA § 48-5-311 (e) (1) (A) (i) ("Any taxpayer or property owner as of the last date for filing an appeal may elect to file an appeal from an assessment by the county board of tax assessors to . . . [t]he county board of equalization as to matters of taxability, uniformity of assessment, and value . . . .").

taxable year should remain the same for 2018. The Board then appealed the BOE's decision to the DeKalb County Superior Court.

In June 2019, Barrett moved for summary judgment, arguing, *inter alia*, that the Board unlawfully reassessed and increased the value of his properties for the 2018 taxable year because, under OCGA § 48-5-299 (c), the property values were "frozen" at the time. The Board filed a response, but before the trial court could rule on the motion, Barrett filed a supplemental motion for summary judgment, which was partly based on decisions this Court issued during the pendency of the litigation.[3]

In the Board's response to Barrett's supplemental summary judgment motion, it conceded that—based on recent decisions of this Court—Barrett was entitled to summary judgment as to his *initial* summary judgment motion. But the Board opposed Barrett's *supplemental* motion for summary adjudication. Ultimately, after holding a hearing on the matter, the trial court granted both of Barrett's summary-judgment motions. This appeal follows.

---

[3] *See Columbia Brookhaven, LLC v. DeKalb Cty. Bd. of Tax Assessors*, 353 Ga. App. 556 (839 SE2d 24) (2020); *DeKalb Cty. Bd. of Tax Assessors v. CWS SGARR Brookhaven, LLC*, 352 Ga. App. 848 (836 SE2d 729) (2019).

Summary judgment is proper when "there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law."[4] Furthermore, a *de novo* standard of review applies to an appeal from a grant or denial of summary judgment, and "we view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant."[5] Moreover, at the summary-judgment stage, "[w]e do not resolve disputed facts, reconcile the issues, weigh the evidence, or determine its credibility, as those matters must be submitted to a jury for resolution."[6] With these guiding principles in mind, we will address the Board's specific claim of error.

In its sole argument on appeal, the Board contends the trial court erred in extending OCGA § 48-5-299 (c) beyond its statutory terms by finding that the values of Barrett's properties were frozen for the two taxable years following the BOE's *second* decision regarding the 2018 taxable year (*i.e.*, 2019 and 2020), rather than the two years following its *first* decision as to the 2017 taxable year (*i.e.*, 2018 and 2019). We disagree.

---

[4] OCGA § 9-11-56 (c); *accord Martin*, 316 Ga. App. at 697.

[5] *Martin*, 316 Ga. App. at 697 (punctuation omitted).

[6] *Tookes v. Murray*, 297 Ga. App. 765, 766 (678 SE2d 209) (2009).

When tasked with interpreting statutory language, we necessarily begin our analysis with "familiar and binding canons of construction."[7] And in considering the meaning of a statute, our charge as an appellate court is to "presume that the General Assembly meant what it said and said what it meant."[8] Toward that end, we must afford the statutory text its plain and ordinary meaning,[9] consider the text contextually,[10] read the text "in its most natural and reasonable way, as an ordinary

---

[7] *Monumedia II, LLC v. Dep't of Transp.*, 343 Ga. App. 49, 51 (1) (806 SE2d 215) (2017) (punctuation omitted); *accord Holcomb v. Long*, 329 Ga. App. 515, 517 (1) (765 SE2d 687) (2014); *In the Interest of L. T.*, 325 Ga. App. 590, 591 (754 SE2d 380) (2014).

[8] *Monumedia II, LLC*, 343 Ga. App. at 51-52 (1) (punctuation omitted); *accord Deal v. Coleman*, 294 Ga. 170, 172 (1) (a) (751 SE2d 337) (2013); *Holcomb*, 329 Ga. App. at 517 (1); *Martinez v. State*, 325 Ga. App. 267, 273 (2) (750 SE2d 504) (2013).

[9] *Holcomb*, 329 Ga. App. at 517 (1); *accord Deal*, 294 Ga. at 172 (1) (a); *see Tibbles v. Teachers Retirement Sys. of Ga.*, 297 Ga. 557, 558 (1) (775 SE2d 527 (2015) ("A statute draws its meaning, of course, from its text.") (punctuation and citation omitted)); *Chan v. Ellis*, 296 Ga. 838, 839 (1) (770 SE2d 851) (2015) (same); *State v. Able*, 321 Ga. App. 632, 636 (742 SE2d 149) (2013) ("A judge is charged with interpreting the law in accordance with the original and/or plain meaning of the text at issue (and all that the text fairly implies) . . . ."); *Singletary v. State*, 310 Ga. App. 570, 572 (713 SE2d 698) (2011) ("In construing these statutes, we apply the fundamental rules of statutory construction that require us to construe the statutes according to their terms, [and] to give words their plain and ordinary meaning . . . ." (punctuation omitted)).

[10] *Monumedia II, LLC*, 343 Ga. App. at 52 (1); *see Deal*, 294 Ga. at 172 (1) (a) ("[W]e must view the statutory text in the context in which it appears[.]"); *see also*

speaker of the English language would,"[11] and seek to "avoid a construction that makes some language mere surplusage."[12] Simply put, when the language of a statute is "plain and susceptible of only one natural and reasonable construction, courts must construe the statute accordingly."[13]

This brings us to the text of OCGA § 48-5-299 (c), which provides:

When the value of real property is reduced or is unchanged from the value on the initial annual notice of assessment or a corrected annual notice of assessment *issued by the board of tax assessors and such valuation has been established as the result of an appeal decision rendered by the board of equalization, hearing officer, arbitrator, or superior court* pursuant to Code Section 48-5-311[14] . . . the *new*

---

*Tibbles*, 297 Ga. at 558 (1) ("The common and customary usages of the words are important, but so is their context." (punctuation and citation omitted)).

[11] *Monumedia II, LLC*, 343 Ga. App. at 52 (1) (punctuation omitted); *accord Deal*, 294 Ga. at 172-73 (1) (a); *Holcomb*, 329 Ga. App. at 518 (1).

[12] *Monumedia II, LLC*, 343 Ga. App. at 52 (1) (punctuation omitted); *accord In the Interest of L.T.*, 325 Ga. App. at 592; *Holcomb*, 329 Ga. App. at 518 (1).

[13] *Monumedia II, LLC*, 343 Ga. App. at 52 (1) (punctuation omitted); *accord Holcomb*, 329 Ga. App. at 518 (1); *Luangkhot v. State*, 292 Ga. 423, 424 (1) (736 SE2d 397 (2013); *see Deal*, 294 Ga. at 173 (1) (a) ("[I]f the statutory text is clear and unambiguous, we attribute to the statute its plain meaning, and our search for statutory meaning is at an end." (punctuation omitted)).

[14] OCGA § 48-5-311 (e) (1) (A) (i) ("Any taxpayer or property owner as of the last date for filing an appeal may elect to file an appeal from an assessment by the

valuation so established by appeal decision or agreement *may not be increased by the board of tax assessors during the next two successive years*, unless otherwise agreed in writing by both parties . . . .[15]

Suffice it to say, the plain language of the foregoing statute describes the exact circumstances present here. Specifically, it provides, in relevant part, for a two-year "freeze" on increasing the value of property when it is reduced or unchanged *as a result of an appeal decision issued by the BOE*. And here, Barrett appealed the Board's property assessments for the 2017 taxable year because he believed they were excessive. The BOE agreed with Barrett and issued a decision that reduced and established new property values for the 2017 taxable year. So, because the relevant property values for the 2017 taxable year were indisputably reduced as a result of an appeal to the BOE, under OCGA 48-5-299 (c), Barrett was entitled to a freeze on the

---

county board of tax assessors to . . . [t]he county board of equalization as to matters of taxability, uniformity of assessment, and value . . . .").

[15] (Emphasis supplied). There are several exceptions provided for in OCGA § 48-5-299 (c) to the protection it affords taxpayers, and in its order, the trial court discusses one of them and found that it did not apply. *See* OCGA § 48-5-200 (c) (1)-(4). But on appeal, the Board does not mention these exceptions, much less argue that one of them is relevant to this case. As a result, the Board has abandoned any argument in that respect. *See Time Warner Entm't Co. v. Six Flags Over Ga., LLC,* 254 Ga. App. 598, 605 (3) (a) (563 SE2d 178) (2002) (deeming an error abandoned when the appellants failed to cite to any relevant facts, give record citations, or present any legal analysis supporting their assertion).

value of each of his properties for the next two taxable years, 2018 and 2019. On this much, the parties now agree.

But the Board and Barrett part ways on the legal implications of the Board's decision to increase the values of Barrett's properties for the *2018* taxable year. Barrett contends that those increases were done in contravention of the agreement he reached with the BOE for the 2017 taxable year and in violation of OCGA § 48-5-299 (c). More precisely, notwithstanding the two-year freeze on the property values established by the BOE for 2017 (as a result of Barrett's appeal), the Board—less than two months after those values were set—sent Barrett assessments for the 2018 taxable year that raised those values in violation of OCGA § 48-5-299 (c). And as a result of the Board's unlawful actions, Barrett was forced to pursue a *second* appeal to the BOE to challenge the Board's *new*, increased assessments for 2018. The BOE then ruled that—for the *2018* taxable year—the relevant property values would remain *unchanged* from the values it established for the 2017 taxable year. The Board appealed this second BOE decision, and the trial court found that, under OCGA § 48-5-299 (c), Barrett was entitled to a two-year freeze on the value of his properties following the 2018 taxable year (*i.e.*, 2019 and 2020) because those values remained

8

unchanged and were established as a result of an appeal to the BOE. The trial court got it exactly right.

The text of OCGA § 48-5-299 (c) is plain and unambiguous, and the Board has not identified any *textual* basis for its assertion that the two-year valuation freeze provided for in that statutory provision does not apply when property values are established by a *second* BOE appeal—which only occurred because the Board willfully violated the two-year freeze applicable to the first BOE decision. And as to the valuations at issue, the relevant property values for the 2018 taxable year remained *unchanged* from the prior year, and these *new* property values resulted from yet another appeal to the BOE. End of story.

In essence, the Board wants us to create an exception to the protection OCGA § 48-5-299 (c) affords taxpayers when the value of their property has been established as a result of two separate appeals to the BOE for different tax years. But once again, there is no textual basis in OCGA § 48-5-299 (c) for such an exception and we will not fashion one out of whole cloth. Indeed, as the Board concedes, the two-year freeze applied to the relevant property values set as a result of an appeal to the BOE regarding the 2017 tax year, and we see no basis for treating the values set by the BOE for the 2018 tax year any differently. In sum, under the plain language of OCGA

§ 48-5-299 (c), Barrett is entitled to a two-year freeze on the relevant property values set for the 2018 taxable year because they remained unchanged from the 2017 values and were established as a result of an appeal to the BOE.[16]

Nevertheless, the Board argues the trial court's order must be reversed because it is proscribed by this Court's 2006 decision in *Mundell v. Chatham County Board. of Tax Assessors*.[17] Indeed, the Board vigorously contends *Mundell* is "clear and controlling" precedent that the trial court failed to faithfully apply in this case. And to be sure, the facts of *Mundell* are similar to those present here.

In *Mundell*, taxpayers challenged the Board's reassessment of their property's value for the tax years 1999 and 2000 in two separate appeals to the BOE.[18] And as in this case, the parties disagreed as to whether the two-year freeze on increasing

---

[16] Even if OCGA § 45-5-299 (c) could possibly be considered ambiguous (which it is not), any such ambiguity would have to be be construed in favor of the taxpayer. Indeed, when a taxing statute has "doubtful meaning, it must be construed [forgivingly] in favor of the taxpayer and against the State." *Interstate N. Sporting Club v. Cobb Cty. Bd. of Tax Assessors*, 250 Ga. App. 221, 224 (551 SE2d 91) (2001).

[17] 280 Ga. App. 389 (634 SE2d 180) (2006).

[18] *See Mundell*, 280 Ga. App. at 389. Although the facts of *Mundell* and this case are similar, one important factual distinction is that here, unlike in the first appeal in *Mundell*, Barrett and the BOE *entered into a written settlement* to resolve his first appeal.

property values began following the tax year at issue in the first appeal (1999) or whether it essentially started over with the tax year at issue in the second appeal (2000).[19] The *Mundell* Court—in interpreting the then existing version of OCGA § 48-5-299 (c)—held that the freeze applied only to the tax year at issue in the first appeal and was not extended by the BOE's decision in the second appeal.[20] It did so even though the text of the 2006 version of OCGA § 48-5-299 (c) provided that the two-year freeze applied to "[r]eal property, the value of which was established *by an appeal [to the BOE] in any year*."[21] The *Mundell* Court did not believe our General Assembly intended for the two-year freeze to extend to the property value set by the BOA in that second appeal.[22] As a result, we held that "a ruling pursuant to OCGA § 48-5-299 (c) does not 'establish' the value of the real property as contemplated by that Code provision so as to entitle a taxpayer to an additional two-year period of protection."[23]

---

[19] *See Mundell*, 280 Ga. App. at 389-90.

[20] *See id.* at 391.

[21] *See id.* (emphasis supplied).

[22] *See id.*

[23] *Id.*

The question before us, then, is whether we are bound to follow *Mundell*'s holding in this case when that decision was made well before the current version of OCGA § 48-5-299 (c) became effective in 2017 *and* the relevant statutory text has been significantly changed since that time. The short answer is: No, we are not.

It is often said that considerations of stare decisis "weigh heavily in the area of statutory construction, where [the legislature] is free to change this Court's interpretation of its legislation."[24] But that is exactly what the General Assembly did with OCGA § 48-5-299 (c). Indeed, the 2006 version of the statute provided:

---

[24] *Illinois Brick Co. v. Illinois*, 431 U. S. 720, 736 (III) (5) (97 SCt 2061, 2070, 52 LEd2d 707) (1977); *see LaRue v. DeWolff, Boberg & Assocs., Inc.*, 552 U.S. 248, 260 (128 SCt 1020, 169 LE2d 847) (2008) (Roberts, C.J., concurring) ("In matters of statutory interpretation, where principles of stare decisis have their greatest effect, it is important that we not seem to decide more than we do."); *IBP, Inc. v. Alvarez*, 546 U.S. 21, 32 (II) (126 SCt 514, 163 LE2d 288) (2005) ("Considerations of stare decisis are particularly forceful in the area of statutory construction, especially when a unanimous interpretation of a statute has been accepted as settled law for several decades."); *RadioShack Corp. v. Cascade Crossing II, LLC*, 282 Ga. 841, 843 (653 SE2d 680) (2007) ("Even those who regard 'stare decisis' with something less than enthusiasm recognize that the principle has even greater weight where the precedent relates to interpretation of a statute." (punctuation omitted)); *Abernathy v. City of Albany*, 269 Ga. 88, 90 (495 SE2d 13) (1998) (same); *but see Gamble v. United States*, __ U. S. __, 139 SCt 1960, 1987 (204 LEd2d 322) (2019) (Thomas, J., concurring) ("I am not aware of any legal (as opposed to practical) basis for applying a heightened version of stare decisis to statutory-interpretation decisions. Statutes are easier to amend than the Constitution, but our judicial duty is to apply the law to the facts of the case, regardless of how easy it is for the law to change.").

12

Real property, the value of which was established by an appeal in any year, that has not been returned by the taxpayer at a different value during the next two successive years, may not be changed by the board of tax assessors during such two years for the sole purpose of changing the valuation established or decision rendered in an appeal to the board of equalization or superior court . . . . [25]

And as noted *supra*, the current version of that statute provides:

When the value of real property is reduced or is unchanged from the value on the initial annual notice of assessment or a corrected annual notice of assessment issued by the board of tax assessors and such valuation has been established as the result of an appeal decision rendered by the board of equalization, hearing officer, arbitrator, or superior court pursuant to Code Section 48-5-311[[26]] . . . the new valuation so established by appeal decision or agreement may not be increased by the board of tax assessors during the next two successive years, unless otherwise agreed in writing by both parties . . . .

Suffice it to say, we are called upon to interpret entirely different statutory text than that at issue in *Mundell*, even if the underlying substance is similar in nature.

---

[25] *See* former OCGA § 48-5-299 (c) (effective June 30, 2006).

[26] OCGA § 48-5-311 (e) (1) (A) (i) ("Any taxpayer or property owner as of the last date for filing an appeal may elect to file an appeal from an assessment by the county board of tax assessors to . . . [t]he county board of equalization as to matters of taxability, uniformity of assessment, and value . . . .").

This matters greatly because "stare decisis doesn't apply to statutory interpretation unless the statute being interpreted is the *same* one that was being interpreted in the earlier case."[27] Indeed, when the General Assembly "amends a statute after it has been interpreted by a court, a different factor comes into play . . . [and] the courts can no longer engage in the assumption that the Legislature acquiesced in the prior case holding."[28] To the contrary, by amending a statute, the General Assembly is

---

[27] *Bourdon v. United States Dep't of Homeland Sec. (DHS)*, 940 F3d 537, 548 (II) (C) (11th Cir. 2019) (punctuation omitted and emphasis supplied); *see In re Nestorovski Estate*, 769 N.W.2d 720, 732 (Mich. App. 2009) ("The doctrine of stare decisis lacks applicability when the Legislature has amended the statutory underpinnings of a [precedent]."); Bryan A. Garner *et al.*, *The Law of Judicial Precedent* 343 (2016) ("One important thing to remember is that stare decisis doesn't apply to statutory interpretation unless the statute being interpreted is the same one that was being interpreted in the earlier case. A statute merely similar in its tenor isn't enough to bind a later court."). *Cf. Davenport v. State*, 309 Ga. 385, 399, 846 S.E.2d 83, 94 (2020) (noting that "before we overrule prior precedent *without an intervening change in the law*, we must consider the doctrine of stare decisis . . . .") (emphasis supplied).

[28] *Phelps v. State*, 532 SW3d 437, 443 n.6 (Tex. App. 2017); *see also Northeast Atlanta Bonding Co. v. State*, 308 Ga. App. 573, 581 (707 SE2d 921) (2011) (Blackwell, J.) ("We are mindful of the admonition that courts should construe statutes in connection and harmony with existing judicial decisions where possible. But harmonizing a statute with inconsistent judicial decisions is not possible when we can readily ascertain the intent of the General Assembly [as expressed by the plain meaning of the statute], and when a construction of the statute that comports with this legislative intent brings the statute into irreconcilable conflict with those existing judicial decisions. Because the intent of the 2009 amendment is clear, and because it cannot be reconciled with [existing precedent], the notion that the statute should be

14

presumptively exercising "its policymaking responsibility in response to the prior case."[29] Thus, when faced with a post-decision statutory amendment, the "justifications for 'super stare decisis' not only fail, they actually compel a court's re-evaluation of the statute out of deference to the Legislature's supremacy on statutory issues."[30] So here, because the text of the 2006 version of OCGA § 48-5-299 (c) is markedly different from that used in the current version of that statute,[31] we are

_____

construed in connection and harmony with [that existing precedent] must yield to the legislative intent as expressed in the plain meaning of the statute.") (cleaned up).

[29] *Phelps*, 532 SW3d at 443 n.6; *see Frett v. State Farm Emp. Workers' Comp.*, 309 Ga. 44, 61 (844 SE2d 749) (2020) (noting that when there is a "misinterpretation and misapplication of statutory law, the General Assembly could abrogate it by amending the statute").

[30] *Phelps*, 532 SW3d at 443 n.6; *see Ga Lottery Corp. v. Tabletop Media, LLC,* 346 Ga. App. 498, 508 (816 SE2d 438) (2018) (Dillard, C.J., concurring fully and specially) ("The separation of powers is essential to the maintenance of our constitutional republic, and it is high time that our discussion of statutory interpretation reflects the reality of our jurisprudence and acknowledges the strict demarcation line between judicial interpretation and legislating . . . .").

[31] The former (2006) and current versions of OCGA § 48-5-299 (c) are not only markedly different in the language they each use to describe the nature and scope of the two-year tax freeze, they are also *substantively* distinct. Indeed, the 2006 version of the statute significantly limits the effectiveness of the tax freeze by providing, *inter alia*, that a property value "established by an appeal" cannot be changed by the board of tax assessors "during such two years *for the sole purpose* of changing the valuation established or decision rendered in an appeal . . . ." (Emphasis supplied). Put another way, under the former statute, if the Board proffered a *different* purpose for changing

15

not bound to follow *our* prior precedent in *Mundell* because the General Assembly has effectively abrogated it.[32]

That said, just because *Mundell* is not binding precedent as to the current version of OCGA § 48-5-299 (c), this does not necessarily mean it is irrelevant. The prior (2006) version of the statute is part of the *statutory* history, and thus the *Mundell* Court's interpretation of the predecessor statute could—at least in theory—provide some guidance in our task of interpreting the current version.[33] But our analysis in *Mundell* provides little interpretive value because the meaning of the

a property's valuation and then prevailed on appeal, then the two-year freeze did not apply. But in stark contrast, the current version of the statute significantly *reduces* the power of the Board and *strengthens* the nature of the tax freeze in favor of the taxpayer by providing, *inter alia*, that the value of a property "established as the result of an appeal decision" may only "be increased by the board of tax assessors during the next two successive years" if such value is "agreed in writing by both parties." Needless to say, this is a meaningful policy change and choice made by our General Assembly in amending this statute.

[32] *See supra* note 29; *State v. Varga*, 86 P3d 139, 145 (Wash. 2004) (*"*It is well-established that the legislature may effectively overrule our decisions interpreting statutory terms by prospectively amending a statute.").

[33] *See Premier Health Care Invs., LLC v. UHS of Anchor, L.P.*, 310 Ga. 32, 46 (849 SE2d 441) (2020)("We have also considered the history of a statute's enactment and amendments in evaluating the meaning of that statute."); *S&S Towing & Recovery, Ltd. v. Charnota*, 309 Ga. 117, 120 (844 SE2d 730) (2020) (examining the "structure and statutory history" of a statute to determine its meaning).

16

current version of § 48-5-299 (c) is unambiguous, so it is unnecessary to venture beyond the current version's plain text. And heeding our Supreme Court's admonition, we will also not engage in any speculation about the General Assembly's intent in enacting the current version of OCGA § 48-5-299 (c).[34] Our analysis rightfully begins and ends with the text of that statute.

For all these reasons, we affirm the trial court's grant of Barrett's motion for summary judgment.

*Judgment affirmed. Mercier and Pinson, JJ., concur.*

---

[34] S*ee Gibson v. Gibson*, 301 Ga. 622, 632 (801 SE2d 40) (2017) (noting that "[w]hen judges start discussing not the meaning of the statutes the legislature actually enacted, as determined from the text of those laws, but rather the unexpressed 'spirit' or 'reason' of the legislation, and the need to make sure the law does not cause unreasonable consequences, we venture into dangerously undemocratic, unfair, and impractical territory" (punctuation omitted));*accord Merritt v. State*, 286 Ga. 650, 656 (690 SE2d 835 (2010) (Nahmias, J., concurring specially) (same); *Ga. Lottery Corp. v. Tabletop Media, LLC*, 346 Ga. App. 498, 506-07 (816 SE2d 438) (2018) (Dillard, J., concurring fully and specially) (same); *Day v. Floyd Cty. Bd. of Educ.*, 333 Ga. App. 144, 150-51 (775 SE2d 622) (2015) (Dillard, J., concurring fully and specially) (same).