## A07A2405. MASSEY et al. v. ROTH.
(659 SE2d 872)

BARNES, Chief Judge.

Marguerite Massey and Wesley J. Kolar appeal the denial of their motion to dismiss an invasion of privacy claim brought against them by Stella M. Roth, contending that, as state employees who were acting within the scope of their employment, these claims are barred by the Georgia Tort Claims Act and sovereign immunity. We agree, and therefore reverse.

The defendant has the burden of proving facts necessary to support a judgment of dismissal on jurisdictional grounds, and the trial court makes the determination as the trier of fact. We review the ruling de novo. *Tootle v. Cartee,* 280 Ga. App. 428 (634 SE2d 90) (2006).

Roth supervised Massey and Kolar at the University of Georgia Environmental Protection Division (EPD) until May 2006. Roth, Massey, and Kolar were subordinates of Kenneth Scott, who was the Associate Vice President for Environmental Safety and who, as their supervisor, had the capacity to make decisions affecting the employees' compensation, evaluations, and employment conditions. Roth and Scott, who was married to someone else, began a sexual relationship in 2003, which violated the university's Non-Discrimination and Anti-Harassment (NDAH) policy. Other employees became aware of the relationship, and some feared for their jobs due to favoritism or retaliation. On at least one occasion Scott terminated an employee upon Roth's recommendation during their affair.

In summer 2003 Massey found an intimate letter with references to a sex manual and sexual activity from Roth to Scott, inside a Valentine's Day card located in a canvas bag in a communal office supply closet. Massey had observed a pattern of intimidation at the EPD by Roth and Scott, and in January 2004, Massey took a copy of the card and letter to the UGA Office of Legal Affairs to complain about the relationship between Roth and Scott. According to NDAH

policy, a supervisor should not have relations with a subordinate the supervisor evaluates for performance and raises, as Scott was doing. The legal affairs director, Stephen Shewmaker, questioned Scott, who initially denied the affair but eventually admitted it and claimed the affair had ended. Both Roth and Scott were reprimanded, but the affair continued.

Kolar and Roth began to experience work-related conflicts, and Kolar feared Roth would use her influence with Scott to have him fired. Massey gave Kolar a copy of the card and letter for his protection, as evidence of the improper relationship between Roth and Scott if Roth tried to have him fired. In explaining why she did so, Massey said:

> I thought that Wes [Kolar] was going to lose his job because of his relationship — his working relationship with [Stella] Roth, who was involved in an illegal relationship with the divisional vice president. And there have been many other people at that division who have been treated the same way for the same reasons who have quit because they were intimidated into it or have been terminated. And there have been legal procedures by some of those people. And I thought that if Wes was terminated that if he needed to go through a grievance procedure he would need to know that [Stella] and Ken were violating that policy.

Roth admits that Massey acted within University policy by taking the card and letter to the Office of Legal Affairs, admits that neither defendant circulated untrue statements about her, and admits that she has no evidence that Massey gave the card and letter to anyone other than Kolar and the Office of Legal Affairs or that Kolar gave a copy to anyone besides a single fellow employee, Dennis Widner. Ultimately, a copy of the letter was mailed anonymously to several newspapers, university organizations, and Scott's wife. Roth admits that she has no proof that either Massey or Kolar took part in these anonymous mailings.

If Massey and Kolar were acting within the scope of their employment when they shared the card and letter with another employee, this suit is barred by the Georgia Tort Claims Act. The Act provides:

> This article constitutes the exclusive remedy for any tort committed by a state officer or employee. A state officer or employee who commits a tort while acting within the scope of his or her official duties or employment is not subject to lawsuit or liability therefor. However, nothing in this article

shall be construed to give a state officer or employee immunity from suit and liability if it is proved that the officer's or employee's conduct was not within the scope of his or her official duties or employment.

OCGA § 50-21-25 (a). The scope of the exemption is broad, and includes a state correctional officer's alleged beating of an inmate while escorting him across prison grounds (*Mattox v. Bailey*, 221 Ga. App. 546 (472 SE2d 130) (1996)); a state trooper's alleged sexual assault during a traffic stop (*Davis v. Standifer*, 275 Ga. App. 769, 771 (1) (a) (621 SE2d 852) (2005)); and a supervisor's alleged sexual harassment of a subordinate (*Ridley v. Johns*, 274 Ga. 241, 242 (552 SE2d 853) (2001)).

Massey and Kolar argue that their conduct in sharing the card and letter fell within the scope of their employment in light of the harassment they underwent due to Roth and Scott's affair, and in light of the University's NDAH policy. Regarding sexual relationships between employees, the policy provides:

> When one party has a professional relationship towards the other, or stands in a position of authority over the other, even an apparently consensual sexual relationship may lead to sexual harassment or other breaches of professional obligations. . . . The University also strongly discourages sexual relationships between faculty or administrators and graduate/professional students and/or employees whose work they supervise. Anyone involved in a sexual relationship with someone over whom he or she has supervisory power must recuse himself or herself from decisions that affect the compensation, evaluation, employment conditions, instruction, and/or the academic status of the subordinate involved.

In his affidavit in this case, legal affairs director Shewmaker stated that Scott had supervisory power over Roth, Massey, Kolar, and Widner that allowed him to make decisions affecting their compensation, evaluations, and employment conditions. Shewmaker also stated that the sexual relationship between Roth and Scott violated the school's NDAH policy. While Roth said she terminated the relationship in January 2004, her deposition testimony in this case established to the contrary that the affair had continued through the present. This lack of candor upon being confronted by the legal affairs office caused delay in addressing the personnel issues surrounding the relationship, which could have reasonably caused unease among the employees subordinate to Scott. The University has adopted policy standards set out in federal law, including EEOC

guidelines on employer liability under Title VII for sexual favoritism. According to Shewmaker:

> The EEOC guidelines explicitly state that actions of sexual favoritism which affect third party employment are violations if the conduct is "sufficiently severe or pervasive 'to alter the conditions of (third party employees) employment and create an abusive working environment' " (*[Meritor Sav. Bank v.] Vinson*, 477 U. S. [57] at 67 [(106 SC 2399, 91 LE2d 49) (1986)] quoting *Henson v. City of Dundee*, 682 F2d 897 [(11th Cir. 1982)]). Under this interpretation, a class of individuals could be considered third party victims of sexual harassment in that their employment conditions could be affected by a sexual relationship between a supervisor and another employee.

Thus, Massey, Kolar, and Widner could be potential victims of sexual harassment, who would be expected to share among themselves any material that could be evidence of a violation of the NDAH policy.

While Roth and the trial court correctly note that Shewmaker's legal conclusions are not binding, his description of Massey and Kolar's actions and analysis of the University policies and framework are more than legal conclusions and constitute evidence that Massey and Kolar acted within the scope of their employment.

Massey and Kolar presented evidence that they distributed the card and letter so that the subordinates would be able to defend themselves in the event of sanctions or termination. Actions taken by employees to defend themselves and enforce university policies can reasonably be construed as actuated by a purpose to serve the employer, and thus fall within the scope of their employment. Therefore, the trial court erred in denying the motion to dismiss.

*Judgment reversed. Smith, P. J., and Miller, J., concur.*

DECIDED MARCH 24, 2008.

*Thurbert E. Baker, Attorney General, G. Michael Banick, Loretta L. Pinkston, Assistant Attorneys General*, for appellants.
*J. Hue Henry*, for appellee.