S12G0552. SHEKHAWAT et al. v. JONES et al.

(746 SE2d 89)

HUNSTEIN, Chief Justice.

We granted certiorari in this case to determine whether physicians employed as faculty members at the Medical College of Georgia ("MCG") were entitled to official immunity in treating a patient at MCG's Children's Medical Center. Appellees Kenneth Jones and Clara Ramon, individually and as parents and next friends of their minor son, ("Plaintiffs") filed a medical malpractice action against Appellants Prem Singh Shekhawat, M.D. and Wayne Mathews, M.D., along with other defendants, arising from treatment rendered to Plaintiffs' child at the Children's Medical Center in December 2003. The trial court granted summary judgment to both Appellants, concluding that they were entitled to official immunity under the Georgia Tort Claims Act. The Court of Appeals reversed, finding a genuine issue of material fact as to whether Appellants, in treating Plaintiffs' child, were acting within the scope of their employment with the State under the analysis utilized by this Court in *Keenan v. Plouffe*, 267 Ga. 791 (482 SE2d 253) (1997). *Jones v. Allen*, 312 Ga. App. 762 (720 SE2d 1) (2011). We granted certiorari to review *Keenan*'s application, and we now conclude that *Keenan* must be overruled, because it conflates our standard for official immunity with that for sovereign immunity. Utilizing the proper analysis, we hold that Appellants were entitled to official immunity because they were acting within the scope of their state employment in rendering

the medical care at issue. We therefore reverse the judgment of the Court of Appeals.

> On appeal from the grant of summary judgment this Court conducts a de novo review of the evidence to determine whether there is a genuine issue of material fact and whether the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law.

*Youngblood v. Gwinnett Rockdale Newton Community Svc. Bd.*, 273 Ga. 715, 717-718 (4) (545 SE2d 875) (2001). So viewed, the relevant evidence shows as follows.

On December 28, 2003, Plaintiffs' newborn son suffered a life-threatening condition and was transferred to MCG from another hospital. Dr. Shekhawat, the MCG neonatologist who was on call, directed the transport team that brought the child to MCG, personally treated the child when he arrived, and supervised a resident fellow who performed follow-up treatment. The child underwent surgery in the early morning hours of December 29, and Dr. Mathews, the on-call anesthesiologist, assisted with the operation. Prior to the surgery, a resident anesthesiologist intubated the child under Dr. Mathews' supervision. Following surgery, the child's endotracheal tube became unsecured, resulting in a dramatic drop in his heart rate and requiring emergency life-saving measures. The child suffered significant permanent disabilities, which Plaintiffs allege are the result of the medical team's failure to ensure the child was adequately oxygenated during intubation.

At the time they treated the child, Dr. Shekhawat and Dr. Mathews were both employed as associate professors of medicine at MCG by the Board of Regents of the University System of Georgia. As MCG faculty physicians, defendants' job responsibilities included instruction of medical students, residents, and fellows, both in the classroom setting and through the clinical treatment of patients at MCG facilities. Both were paid an annual salary by the Board of Regents for all their teaching and clinical work at MCG, and each was a party to a written employment agreement with the Board of Regents on behalf of MCG. Dr. Shekhawat and Dr. Mathews have both attested that their treatment of Plaintiffs' child was rendered solely in the course of their employment as state-employed faculty physicians at MCG.

1. The doctrine of official immunity in its current form originates with the ratification and enactment of a constitutional amendment generally reinstating sovereign immunity to the State. See Charles

N. Kelley, Jr., Peach Sheets, *Georgia Tort Claims Act: Provide a Limited Waiver of Sovereign Immunity*, 9 Ga. St. U. L. Rev. 349, 349-350 (1992). Prior to the 1990 amendment, the State had waived its sovereign immunity as to claims covered by liability insurance, though only up to the dollar amount of coverage provided. Id. at 349; see *Martin v. Dept. of Public Safety*, 257 Ga. 300 (357 SE2d 569) (1987). With the amendment's enactment, this waiver of immunity was removed and sovereign immunity was generally restored "[e]xcept as specifically provided by the General Assembly in a State Tort Claims Act." Ga. Const. of 1983, Art. I, Sec. II, Par. IX (d). See id. at (a) (General Assembly may waive sovereign immunity by enacting a State Tort Claims Act). In 1992, our legislature enacted the Georgia Tort Claims Act ("GTCA"), OCGA §§ 50-21-20 to 50-21-36. Ga. L. 1992, p. 1883, § 1.

Expressly framed as an effort to balance the unfairness that immunity visits on injured parties with the State's interest in protecting the public purse from liability arising from the array of functions that government performs, the GTCA waives the State's sovereign immunity in limited circumstances, in accordance with prescribed procedures. See OCGA § 50-21-21; see also Kelley, 9 Ga. St. U. L. Rev. at 352 (explaining GTCA's detailed procedural requirements). As the "exclusive remedy for any tort committed by a state officer or employee," OCGA § 50-21-25 (a), the GTCA permits suits against the State for the torts of state officers and employees when committed "while acting within the scope of their official duties or employment." OCGA § 50-21-23 (a).

Closely intertwined with the GTCA's restoration of sovereign immunity is its recognition of official immunity. While sovereign immunity protects from tort liability the State itself, including its agencies and instrumentalities, official immunity protects state employees from being sued in their *personal* capacities. *Donaldson v. Dept. of Transp.*, 262 Ga. 49, 56 (414 SE2d 638) (1992) (Hunt, J., concurring). Thus, the GTCA, while allowing tort suits to proceed against the State within its prescribed parameters, also makes clear that any liability rests not with state employees in their individual capacities but rather with "the state government entity for which the state officer or employee was acting." OCGA § 50-21-25 (b). See also Ga. Const. of 1983, Art. I, Sec. II, Par. IX (d) (with limited exceptions, "officers and employees of the state or its departments and agencies shall not be subject to suit or liability, and no judgment shall be entered against them, for the performance or nonperformance of their official functions").

The result is that, where a state employee commits a tort while acting within the scope of his employment with the State, the State

through the employing government agency may be held liable, but the individual state employee may not. See *Riddle v. Ashe*, 269 Ga. 65 (2) (495 SE2d 287) (1998). Where the alleged tortfeasor was not acting within the scope of his employment, however, the State's sovereign immunity remains intact, and any recourse must be sought against the tortfeasor personally. See OCGA § 50-21-25 (a) (state officer or employee does not enjoy immunity "if it is proved that the officer's or employee's conduct was not within the scope of his or her official duties or employment"); see also *Donaldson*, 262 Ga. at 56 (Hunt, J., concurring) (distinguishing between liability in state employee's official capacity versus liability in personal capacity).

As this explication of the statute makes clear, the sole issue in determining whether an individual state employee may be liable as a defendant in a tort suit is whether the employee was acting within the scope of his employment with the State in committing the allegedly tortious act. See *Riddle v. Ashe*, 269 Ga. at 66-67 (2) ("a state actor is immune from suit if acting within the scope of his or her official duties"); *Ford v. Caffrey*, 293 Ga. App. 269, 271 (666 SE2d 623) (2008) (explaining that defendant would enjoy official immunity if he committed alleged torts "as a state employee within the scope of his official duties or employment"); *Massey v. Roth*, 290 Ga. App. 496, 497 (659 SE2d 872) (2008) (if the defendants "were acting within the scope of their employment . . . this suit is barred by the Georgia Tort Claims Act"). Accordingly, the sole question presented here is whether Drs. Shekhawat and Mathews were acting within the scope of their employment with MCG in rendering the medical treatment that is the subject of this malpractice action.

Unfortunately, our appellate jurisprudence on official immunity in the context of state-employed physicians has for the past decade and a half strayed considerably from this straightforward analysis. The genesis of this misguided path was this Court's opinion in *Keenan v. Plouffe*. In *Keenan*, which also involved malpractice claims against an MCG physician, we held that the state-employed physician did not enjoy official immunity, on the ground that the physician's conduct in treating patients called for "the exercise of his medical (as opposed to governmental) discretion" and involved "distinct obligations to [the patient] that were independent of his official state duties." 267 Ga. at 791, 793. Summing up its rationale, this Court stated:

> the nature of [the physician's] relationship with [the patient], as well as the fact that the allegations of negligence relate solely to [the physician's] independent medical judgment in treating [the patient], militate towards a ruling that [the

physician] was not acting within the scope of his official state duties in treating [the patient].

Id. at 795. Concluding that the purposes of official immunity were not served by extending immunity under the circumstances presented, we then posted an important caveat:

> Because this case involves the exercise of a medical discretion on a private-pay patient that was not controlled by the government employer or by statute, we do not consider whether immunity is appropriate for state-employed physicians who are required to treat particular patients, or who are alleged to have violated governmental, as opposed to medical, responsibilities, or whose medical discretion is controlled or impacted by governmental standards or constraints.

Id. at 796, n. 17.

Since *Keenan* was decided, this Court and the Court of Appeals have struggled with its scope and application. Shortly after *Keenan*, we held that the "key factor in *Keenan* which prevented reliance on official immunity was that the patient was a private patient." *Harry v. Glynn County*, 269 Ga. 503, 505 (2) (501 SE2d 196) (1998). See also *Schulze v. DeKalb County*, 230 Ga. App. 305, 308 (3) (496 SE2d 273) (1998) (noting *Keenan*'s "limited scope" in declining to apply it to the county-employed paramedics). More recently, the Court of Appeals has construed *Keenan* as holding that official immunity is abrogated only where the state-employed physician is treating "private-pay" patients and those patients had sought care from that particular physician, rather than simply from the state facility at which he worked. *Porter v. Guill*, 298 Ga. App. 782 (1) (681 SE2d 230) (2009).[1] The Court of Appeals has further concluded that *Keenan*'s holding applies only to attending physicians, not to medical residents, because residents are "subject to the control and direction of others" and "receive no compensation, either directly or indirectly, from any patient." *Bonner v. Peterson*, 301 Ga. App. 443, 451 (2) (b) (687 SE2d 676) (2009).

These cases show that the official immunity analysis for state-employed physicians has devolved from the straightforward "scope of employment" test to a convoluted analysis examining the nature of

---

[1] The Court of Appeals defined "private-pay patient" as one whose treatment is funded by a third-party private insurer, as opposed to one who is rendered treatment as an indigent or has Medicaid or other government health care coverage. *Porter*, 298 Ga. App. at 785, 787.

the discretion exercised, the identity of those to whom duties are owed, and the payment sources and arrangements involved. Thus, this analysis has become untethered from its statutory origin. Moreover, no appellate opinion in this State has followed the result reached in *Keenan*.

A close review of *Keenan* reveals its analytical flaw. Specifically, this Court appears to have conflated the test for official immunity with that for sovereign immunity in distinguishing between medical and governmental discretion and between the physician's duty to the patient and his duty to the State. Where the *State agency* is the defendant and *sovereign immunity* is at issue, the analysis *does* depend on whether the employee who committed the tort was exercising a "discretionary function," which the GTCA defines as "a function or duty requiring a state officer or employee to exercise his or her policy judgment." OCGA § 50-21-22 (2). Thus, we have held, in assessing the *sovereign immunity* of a *state agency* with respect to alleged medical malpractice of agency staff, that "medical decisions about the proper diagnosis and treatment of [a patient] do not involve policy judgments based on social, political, or even economic factors." *Edwards v. Dept. of Children & Youth Svcs.*, 271 Ga. 890, 893 (525 SE2d 83) (2000) (emphasis omitted). However, the GTCA's "discretionary function" exception is relevant only to the issue of sovereign immunity, and not to the issue of official immunity, which depends entirely on the state employee's scope of employment.

In undertaking our analysis in *Keenan*, we appear to have erroneously relied on a Virginia Supreme Court decision involving similar facts, *James v. Jane*, 282 SE2d 864 (Va. 1980). See *Keenan*, 267 Ga. at 794-795. Reliance on *James*, however, was misplaced, as *James* was decided under the doctrine of *sovereign immunity* as it existed under Virginia law at the time. See *James*, 282 SE2d at 869. While the facts and policy arguments in *James* were similar to those in this case, the difference is that here we are bound by the plain language of the GTCA, which apparently had no analogue in Virginia law at that time.

As this Court has noted before:

> The rule of *stare decisis* is a wholesome one, but should not be used to sanctify and perpetuate error. . . . [I]t has never been the doctrine of any court of last resort that the law is to be a refuge and safe asylum for all the errors that creep into it. . . . Courts, like individuals, but with more caution and deliberation, must sometimes reconsider what has been already carefully considered, and rectify their own mistakes.

*City of Atlanta v. First Presbyterian Church*, 86 Ga. 730, 732-733

(13 SE 252) (1891). Having recognized the analytical flaw in *Keenan* and our appellate courts' subsequent efforts to limit its application, we now overrule it. Accordingly, our analysis of a physician's official immunity under the GTCA shall proceed exclusively on the basis of whether the physician was acting within the scope of his state employment in performing the treatment that is the subject of the malpractice action.

Framed in these terms, the issue in this case is easily resolved. Appellants were acting within the scope of their employment with MCG. Both physicians attested to this fact in sworn affidavits, and the evidence clearly reflects that both physicians were performing the regular duties of their employment, during their regular hours of employment, at their regular site of employment. Though Plaintiffs attempt to obscure the issue of Appellants' employment status with evidence regarding the complex affiliation agreement among the entities comprising the MCG academic medical center, this evidence fails to alter the simple truth that Appellants were acting within the scope of their state employment in rendering the treatment at issue here. Therefore, Appellants are entitled to official immunity.

2. As we have noted, the effect of recognizing official immunity does not necessarily leave the injured plaintiff without recourse. While official immunity relieves the state employee of personal liability, the injured plaintiff may still seek relief against the "state government entity for which the state officer or employee was acting," OCGA § 50-21-25 (b); see OCGA § 50-21-23. Thus, the plaintiff, though constrained by the GTCA's procedures, exceptions, and limitations, is not necessarily without any remedy. See OCGA § 50-21-23 (a), (b); see also *Edwards*, 271 Ga. at 893 (allowing medical negligence suit to proceed against state agency). Indeed, Plaintiffs here did just that, having joined the Board of Regents as a defendant in this action.

3. As a final note, we observe that this case does not present a situation involving physicians who are state-employed but also engage in some type of outside private practice. In theory, one can envision a scenario in which a state-employed physician, while "off-duty" from the State, might practice in a separate clinic, which is owned, operated, and administered independently of the State; bills and collects payments for its medical services with no State involvement; and insures its physicians with private malpractice coverage or self-insurance.[2] To the extent such arrangements exist, the physician, while engaged in this outside private practice, would arguably

---

[2] We note that at least one of the numerous documents governing the relationships among the various entities comprising the MCG academic medical center appears to contemplate the

not be acting within the scope of his employment with the State. Under these facts, the physician would likely be precluded from invoking official immunity under the "scope of employment" standard that we have today restored.

*Judgment reversed. All the Justices concur, except Thompson, P. J., who concurs specially.*

THOMPSON, Presiding Justice, concurring specially.

Although I agree with much of what is said in the majority opinion, I write separately because I see no need to overrule *Keenan v. Plouffe*, 267 Ga. 791 (482 SE2d 253) (1997). Simply put, while much of the discussion in *Keenan* strayed from a proper analysis of official immunity under OCGA § 50-21-25 (a), its holding can be limited to its facts,[3] is not inconsistent with OCGA § 50-21-25 (a),[4] and is not in conflict with the holding we reach today. We should not go out of our way to overrule it. See *Etkind v. Suarez*, 271 Ga. 352, 357 (519 SE2d 210) (1999) ("doctrine of stare decisis is essential to the performance of a well-ordered system of jurisprudence").

*Keenan* proffered several reasons for concluding that Dr. Plouffe was not acting in the scope of his official state duties when he treated his patient. However, none of these reasons was viewed as a talisman, and we subsequently made it clear that "[t]he key factor in *Keenan* which prevented reliance on official immunity was that the patient was a *private patient.*" *Harry v. Glynn County*, 269 Ga. 503, 505 (501 SE2d 196) (1998) (emphasis supplied). That is because Ms. Keenan sought out and engaged Dr. Plouffe who agreed to be employed as her

---

possibility of MCG physicians engaging in outside practice, in which clinical income derived from patient care rendered off-campus may flow directly to the physician and not through MCG. Such arrangements, according to the Physicians Practice Group's "Policies with Respect to the Distribution of Revenue," may be made only "[u]nder certain circumstances . . . and with the prior knowledge and approval of the departmental Chair, the Dean, and the President of the Medical College of Georgia." Moreover, physicians may receive such income only "up to a predetermined limit." Thus, any such arrangements appear to represent the exception rather than the rule.

[3] Our holding in *Keenan* was a narrow one and included this express caveat:
    Because this case involves the exercise of a medical discretion on a private-pay patient that was not controlled by the government employer or by statute, *we do not consider whether immunity is appropriate for state-employed physicians who are required to treat particular patients,* or who are alleged to have violated governmental, as opposed to medical, responsibilities, or whose medical discretion is controlled or impacted by governmental standards or constraints.
(Emphasis added.) Id. at 796, n. 17.

[4] We plainly stated in *Keenan* that "the decisive question in this case is whether Dr. Plouffe was acting within the scope of his official state duties while treating Ms. Keenan. If he was, then he is protected from suit by OCGA § 50-21-25." Id. at 793.

physician. Compare *Keenan*, supra at 793, with *Porter v. Guill*, 298 Ga. App. 782, 786 (681 SE2d 230) (2009).

In this case, unlike *Keenan*, the patient did not seek and make arrangements to employ a particular physician. On the contrary, the patient only happened to be treated by defendants, who were state-employed physicians, when the patient was admitted to MCG's facility under life-threatening conditions. Thus, plaintiff's child was not a *private* patient of defendants. On the basis of this "key factor," I would conclude that defendants treated plaintiffs' child in their official capacity as state-employed faculty members of MCG and that they are entitled to official immunity as a matter of law. And I would leave *Keenan v. Plouffe* in place, emended, but not erased.

DECIDED JULY 11, 2013 —
RECONSIDERATION DENIED JULY 24, 2013.

*Carlock, Copeland & Stair, Adam L. Appel, Kim M. Ruder, Owen, Gleaton, Egan, Jones & Sweeney, Annarita M. Busbee, Derrick L. Bingham*, for appellant.

*Blasingame, Burch, Garrard & Ashley, Gary B. Blasingame, Andrew J. Hill III, Josh B. Wages, Vincent A. Toreno*, for appellee.

*Hull Barrett, Floyd M. Taylor, David E. Hudson, James V. Painter, Trotter Jones, James S. V. Weston, Samuel S. Olens, Attorney General, Kathleen M. Pacious, Deputy Attorney General, Loretta L. Pinkston, Senior Assistant Attorney General, Claude M. Sitton, Assistant Attorney General*, amici curiae.