**SECOND DIVISION**
**MILLER, P. J.,**
**MERCIER and BROWN, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

*DEADLINES ARE NO LONGER TOLLED IN THIS COURT. ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.*

**June 19, 2020**

# In the Court of Appeals of Georgia

A20A0191. CAMPBELL et al. v. CIRRUS EDUCATION, INC., et al.

MILLER, Presiding Judge.

This appeal involves a dispute between two teachers, Susan Campbell and Ginger Snow, and their former charter school employer, Cirrus Education, Inc.[1] and its superintendent and chief executive officer, Ashanti Johnson. Campbell and Snow appeal from the trial court's order granting Cirrus Education's and Johnson's (collectively "Cirrus") motion to dismiss, arguing that (1) the trial court did not conduct the proper inquiry and assumed facts outside of the complaint in ruling on the motion to dismiss; (2) the trial court erred in its determination that Cirrus was entitled to sovereign immunity; (3) the trial court erred in its determination that

---

[1] We note that Cirrus Education, Inc. states that its correct name is Cirrus Education Group, Inc.

Johnson was entitled to official immunity; and (4) the trial court erred in dismissing their whistleblower claim on the grounds that they failed to act with diligence in serving their complaint. We conclude that the trial court conducted the proper inquiry and did not assume facts outside of the complaint in ruling on the motion to dismiss, that Cirrus was entitled to sovereign immunity, that Johnson was entitled to official immunity, and that the appellants' whistleblower claim was properly dismissed because they failed to act with diligence in serving their complaint. Accordingly, we affirm the trial court's order granting the motion to dismiss.

> At the outset, we note that on appeal, this Court conducts a de novo review of a trial court's ruling on a motion to dismiss. In doing so, our role is to determine whether the allegations of the complaint, when construed in the light most favorable to the plaintiff, and with all doubts resolved in the plaintiff's favor, disclose with certainty that the plaintiff would not be entitled to relief under any state of provable facts; however we need not adopt a party's legal conclusions based on these facts.

(Citations and punctuation omitted.) *Dove v. Ty Cobb Healthcare Systems, Inc.*, 316 Ga. App. 7, 9 (729 SE2d 58) (2012).

2

So viewed, the record shows that from 2016 to 2017, Campbell and Snow were teachers at the Cirrus Academy,[2] a state charter school which has a state-wide attendance zone and operates as a public school under a charter that was approved by the State Charter School Commission ("the Commission"). According to the allegations in the complaint, Campbell was hired to teach first grade students, while Snow was hired to teach special education. According to the appellants, Johnson told them that Cirrus had received $300,000 for special education services and materials. When Campbell requested certain supplies from Johnson on behalf of Snow and another teacher, however, Johnson told her that "it wasn't in the budget." Snow "observed" that a certain teacher at Cirrus did not have the requisite teaching certificates and when she voiced her concerns to Cirrus' principal, the principal told her to "mind her allegiance."

---

[2] Cirrus Education Group, a nonprofit corporation, entered into a charter agreement with the State Charter Schools Commission for the purpose of creating and operating a state charter school, Cirrus Academy. See OCGA § 20-2-2065 (b) (4) (stating that charter schools shall be "[o]rganized and operated as a nonprofit corporation under the laws of this state. . . ."

The appellants alleged that in October 2016, they noticed that the full-time equivalent (FTE) count[3] did not match the actual number of special education students who were enrolled at Cirrus and that several individual education programs ("IEP")[4] were either expired or were about to expire. Snow expressed her concerns about the FTE discrepancies to Johnson and other Cirrus administrators, and she and Campbell were later sent threatening text messages. Campbell alleged that she also received a text message from an unknown number threatening her that there would be "consequences" if she attended any board meetings or "anything else" regarding the alleged discrepancies in Cirrus' records. The appellants told Johnson and Cirrus' principal that the special education laws were being broken, and Johnson allegedly told Campbell, "do not contact the State."

Plaintiff Campbell subsequently contacted the Georgia Department of Education ("DOE") and expressed her concerns that Cirrus was mishandling government funds appropriated for the school and that special education students were not receiving their requisite services, and she also told the DOE of other issues

[3] The full-time equivalent count represents a day's worth of classes for one special education student.

[4] Individual education programs are plans that set out the academic and curriculum goals and the support services needed for special needs students.

4

involving Cirrus. According to Campbell, after speaking with the DOE, Johnson and Cirrus' principal "screamed" at Campbell for contacting the DOE. The appellants alleged that they were subjected to repeated instances of harassment and verbal abuse after contacting the DOE and were also denied retirement benefits. The appellants were later terminated from their employment at Cirrus after the DOE disclosed the results of its investigation into Cirrus and found that it had violated federal and state laws.

The Appellants subsequently filed suit against Cirrus under seal[5] pursuant to the Georgia Taxpayer Protection Against False Claims Act ("TPAFCA") on February 16, 2018. The appellants later amended their complaint on May 1, 2018, asserting claims under the Whistleblower Act, Georgia's RICO statutes, intentional torts, disparagement, slander, and libel, and requests for punitive damages, litigation costs, and attorney fees. The appellants served the first amended complaint on May 25, 2018. The appellants later filed a second amended complaint on July 23, 2018. Cirrus answered and simultaneously filed a motion to dismiss. Following a hearing, the trial

---

[5] OCGA § 23-3-122 (b) (2) states in relevant part that "[t]he complaint shall be filed in camera and under seal, shall remain under seal for at least 60 days, and shall not be served on the defendant until the court so orders."

court granted Cirrus' motion to dismiss. In granting the motion, the trial court found that Cirrus was entitled to sovereign immunity, that Johnson was entitled to official immunity, and that the appellants' claims under the Whistleblower Act were barred because they were not diligent in serving their complaint. This appeal followed.

1. First, the appellants argue that the trial court erred in granting the motion to dismiss because the trial court did not allow the parties to conduct discovery and the trial court considered evidence outside of the complaint in ruling on the motion to dismiss. This enumeration of error lacks merit.

(a) As to the appellants' contention regarding the trial court's failure to allow the parties to conduct discovery,

> [i]f a party files a motion to dismiss before or at the time of filing an answer and pursuant to the provisions of this Code section, discovery shall be stayed for 90 days after the filing of such motion or until the ruling of the court on such motion, whichever is sooner. The court shall decide the motion to dismiss within the 90 days provided in this paragraph.

OCGA § 9-11-12 (j) (1).

Here, the record shows that after the appellants filed their first and second amended complaints, Cirrus filed its answers and filed a motion to dismiss both

6

complaints on June 22, 2018, and on August 28, 2018. More importantly, Cirrus filed a motion to extend the stay of discovery until a ruling on the motion to dismiss, to which the appellants did not object. Accordingly, we reject the appellants' argument that the trial court erred by granting the motion to dismiss when discovery had not yet commenced. See *Paul and Suzie Schutt Irrevocable Family Trust v. NAC Holding, Inc.*, 283 Ga. App. 834, 837 (2) (642 SE2d 872) (2007) (holding that the trial court did not abuse its discretion in ruling on the motion to dismiss without affording the appellant the opportunity to conduct discovery where the appellant stipulated to a stay of discovery).

(b) The appellants further argue that the trial court assumed facts outside of the complaint when ruling on the motion to dismiss. This argument lacks merit.

It is true that

[a]lthough a trial court has the option to consider evidence attached to a motion to dismiss and brief in support thereof, when it does so it converts the motion to dismiss into a motion for summary judgment, governed by OCGA § 9-11-56. In accordance with this procedure, the trial court has the burden of informing a plaintiff that it will be considering exhibits attached to the defendant's motion to dismiss and that the plaintiff would have no less than 30 days within which to submit

7

his or her own evidence in response to the motion for summary judgment.

(Citations and punctuation omitted; footnotes omitted.) *Islam v. Wells Fargo Bank, N. A.*, 327 Ga. App. 197, 200-201 (1) (757 SE2d 663) (2014).

Here, however, the appellants have not shown that the trial court considered matters outside of the complaint and the answer when ruling on the motion to dismiss. Indeed, the appellants have not identified any portion of the trial court's order which purports to show that it relied on matters outside of the complaint and answer in ruling on the motion. Instead, the appellants rely on facts asserted in Cirrus' motion to dismiss, and argue that, "[w]hile the trial court avoided citing any of these materials in its order, it plainly assumed facts that were outside of the [a]ppellants' complaint and should be reversed." In light of the appellants' complete failure to identify any portion of the trial court's order that reveal that the trial court assumed facts outside of the complaint and answer, this claim of error is wholly meritless and provides no basis for reversal of the trial court's order.

2. Next, the appellants argue that the trial court erred by ruling that Cirrus was entitled to sovereign immunity. We conclude that the trial court properly determined that Cirrus was entitled to sovereign immunity.

8

"We review de novo a trial court's ruling on a motion to dismiss based on sovereign immunity grounds, which is a matter of law. Factual findings are sustained if there is evidence supporting them, and the burden of proof is on the party seeking the waiver of immunity." (Citation omitted.) *Douglas v. Dept. of Juvenile Justice*, 349 Ga. App. 10, 10-11 (825 SE2d 395) (2019).

Sovereign immunity applies to state instrumentalities. *Kyle v. Georgia Lottery Corp.*, 290 Ga. 87, 88 (1) (718 SE2d 801) (2011). "Further, it is well settled that the sovereign immunity of the State and its departments and agencies can only be waived by an Act of the General Assembly, which specifically provides that sovereign immunity is thereby waived and the extent of such waiver." (Punctuation omitted.) *Fulton County School Dist. v. Jenkins*, 347 Ga. App. 448, 449 (820 SE2d 75) (2018). To determine whether an entity is an instrumentality of the state for sovereign immunity purposes, the Georgia Supreme Court has said that the standard to be applied is the analysis set forth in *Miller v. Ga. Ports Auth.*, 266 Ga. 586 (470 SE2d 426) (1996). *Kyle*, supra, 290 Ga. at 88-90 (1). Under a *Miller* analysis, courts are to examine (1) the legislation creating the entity, and (2) the public purposes for which it was created. *Kyle*, supra, 290 Ga. at 90-91 (1).

Under this construct, we conclude that Cirrus must be classified as an instrumentality of the state for sovereign immunity purposes. Article VIII, Section V, Paragraph VII of the Georgia Constitution permits the creation of special schools including state charter schools and mandates that such schools are to be public schools only. See also OCGA § 20-2-2081 (5) ("A state charter school shall be a public school."). Considering the public purposes for which state charter schools were created, "[c]harter schools and charter systems are governed by the Charter Schools Act of 1998." *Day v. Floyd County Bd. of Ed.*, 333 Ga. App. 144, 147 (1) (775 SE2d 622) (2015). "The Charter Schools Act was enacted by the General Assembly with the intent to increase student achievement through academic and organizational innovation by encouraging local school systems to utilize the flexibility of a performance based contract called a charter." (Citation and punctuation omitted.) *Atlanta Independent School System v. Atlanta Neighborhood Charter School, Inc.*, 293 Ga. 629, 630 (748 SE2d 884) (2013). Additionally state charter schools "can serve as a complement to the educational opportunities provided by local boards of education in the state's system of public education[.]" OCGA § 20-2-2080 (a) (1). "Funding for state charter schools . . . [is] subject to appropriations by the General Assembly and such schools [are] treated consistently with all other public schools in

10

this state[.]" OCGA § 20-2-2089 (e). Moreover, state charter schools are regulated by the Commission, the Commission is vested with the authority to approve and deny state charter school petitions and to terminate state charter school contracts. OCGA § 20-2-2083 (a) (1) - (c) (2). "Therefore, the purpose, function, and management of [Cirrus] are indelibly intertwined with the State in a manner that qualifies it for the protection of sovereign immunity as a State instrumentality." *Kyle*, supra, 290 Ga. at 91 (1).

The appellants assert numerous arguments to support their position that Cirrus is not entitled to sovereign immunity, but none of their arguments have merit. First, the appellants argue that the trial court incorrectly applied the *Miller* analysis because it only considered whether state charter schools are indelibly intertwined with the state instead of whether Cirrus was indelibly intertwined with the State. As stated above, however, Cirrus is a state charter school and, as such, is regulated by the state through the Commission. OCGA § 20-2-2083 (a) (1) - (c) (2). Therefore, this argument necessarily fails.

Second, the appellants argue that the trial court erred by ruling that Cirrus was entitled to sovereign immunity because many of the factors establishing state charter schools could apply to all entities of any kind. The appellants' argument, however,

11

is misguided. Our Constitution and statutes contain provisions expressly establishing which entities are public entities, and, as stated above, state charter schools such as Cirrus, is one such entity. See, e.g., OCGA § 20-2-2081 (5) ("A state charter school shall be a public school."). Accordingly, this argument also fails.

We also reject the contention that the trial court erred by failing to apply the federal courts' "pervasive entwinement" test to determine whether Cirrus is entitled to sovereign immunity. The Supreme Court of Georgia has already established that the test to be applied in determining whether an entity is entitled to sovereign immunity is the *Miller* standard. *Kyle*, supra, 290 Ga. at 88-90 (1). The appellants provide no authority to support the proposition that courts should ignore or set aside precedent from our Supreme Court and instead look to the federal courts' pervasive entwinement test in determining whether an entity is entitled to sovereign immunity and thus immune from suit in Georgia state courts.

The appellants also argue that the trial court erred by determining that Cirrus was entitled to sovereign immunity because the Charter Schools Act renders Cirrus a public school and not a public entity. This claim is meritless.

The particular criterion upon which the appellants base their argument is found in OCGA § 20-2-2065 (b) (4), which states that a charter school or a charter system[6] shall be "[o]rganized and operated as a nonprofit corporation under the laws of this state; provided, however, that this paragraph shall not apply to any charter petitioner that is a local school, local school system, or state or local public entity[.]" Thus, based on OCGA § 20-2-2065 (b) (4), the appellants contend that charter schools like Cirrus are distinguishable from traditional public schools and state or local entities.

This particular criterion, however, does not support the appellants' argument. As previously stated, state charter schools are required to be public schools. OCGA § 20-2-2081 (5). The Act, however, allows for existing local schools and school districts to convert to charter schools or charter systems. OCGA § 20-2-2063.2. Thus, OCGA § 20-2-2065 (b) (4) merely stands for the proposition that existing local public schools and school districts do not have to organize and operate as nonprofit organizations. Accordingly, the appellants' claim that OCGA § 20-2-2065 (b) (4) renders Cirrus a private entity fails.

---

[6] A charter system is "a local school system that is operating under the terms of a charter[.]" OCGA § 20-2-2062 (3.1).

13

Lastly, we also reject the appellants' claim that OCGA § 20-2-2065 (a) reflects that a non-profit corporation's state charter school must be treated in a different manner from other public schools. OCGA § 20-2-2065 (a) provides a broad waiver that states that charter schools or charter systems

> shall not be subject to the provisions of this title or any state or local rule, regulation, policy, or procedure relating to schools within an applicable school system regardless of whether such rule, regulation, policy, or procedure is established by the local board, the state board, or the Department of Education; provided, however, that the state board may establish rules, regulations, policies, or procedures consistent with this article relating to charter schools . . . In exchange for such a waiver, the charter school agrees to meet or exceed the performance based goals included in the charter and approved by the local board or, for the charter system, the system agrees to meet or exceed the system-wide performance based goals included in the charter and approved by the state board, including but not limited to raising student achievement.

The appellants fail to show, however, that this waiver has any bearing upon Cirrus' status as a public school for purposes of sovereign immunity. Furthermore, such a waiver is available to all public schools in this state. See OCGA § 20-2-80 (a) ("A local school system may request increased flexibility from certain state laws, rules, and regulations in exchange for increased accountability and defined consequences

14

through a contract with the State Board of Education. Such contract shall establish a framework of accountability, flexibility, and consequences in accordance with this article."). Therefore, for all of the reasons stated above, the trial court did not err by ruling that Cirrus was entitled to sovereign immunity and in dismissing the appellants' lawsuit.

3. Next, the appellants further argue that the trial court erred in its determination that Johnson was entitled to official immunity. We affirm the trial court's determination that Johnson was entitled to official immunity.

"We review de novo a trial court's ruling on a motion to dismiss based on official immunity grounds, which is a matter of law. However, factual findings by the trial court in support of its legal decision are sustained if there is any evidence authorizing them, and the burden of proof is on the party seeking the waiver of immunity." (Citation and punctuation omitted.) *Stephens v. Coan*, 349 Ga. App. 147, 148 (825 SE2d 525) (2019).

"The doctrine of official immunity in its current form originates with the ratification and enactment of a constitutional amendment generally reinstating sovereign immunity to the State." *Shekhawat v. Jones*, 293 Ga. 468, 469 (1) (746 SE2d 89) (2013). "With the amendment's enactment, this waiver of immunity was

removed and sovereign immunity was generally restored except as specifically provided by the General Assembly in a State Tort Claims Act." (Citation and punctuation omitted.) Id. at 470 (1). In 1992, the legislature enacted the Georgia Tort Claims Act ("GTCA"). Id.

> The GTCA constitutes the exclusive remedy for any tort committed by a state officer or employee. *A state officer or employee who commits a tort while acting within the scope of his or her official duties or employment is not subject to lawsuit or liability therefor*. And [the GTCA] expresses the public policy of this state that state officers and employees shall not be subject to lawsuit or liability arising from the performance or nonperformance of their official duties or functions. State officers and employees are therefore immune from tort suits seeking to impose individual liability on them for any tort committed by them within the scope of state employment, *including torts based on intentional wrongful conduct or actions taken with malice and intent to injure*. This broad immunity from individual liability implements the legislative intent expressed in the GTCA that state officers and employees be free to act within the scope of their state employment without fear of lawsuits and loss of personal assets[.] Where the state employee acts in the prosecution and within the scope of his official duties, intentional wrongful conduct comes within and remains within the scope of employment.

(Citations and punctuation omitted; emphasis in the original.) *Stephens*, supra, 349 Ga. App. at 150-151 (1).

As we held in Division 1, Cirrus is an instrumentality of the state and therefore Johnson, Cirrus' superintendent and chief executive officer, is a state officer or employee for purposes of the GTCA.[7] Here, the appellants' claims are predicated on Johnson's alleged acts of committing four torts — a violation of Georgia's RICO statute, disparagement, slander, and libel. Specifically, the appellants alleged that, through a "pattern of racketeering activity," Johnson perpetuated a scheme to defraud the state and federal governments through the submission of knowingly false information, and that Johnson made false and defamatory statements directed at the appellants to injure their reputation. As reflected in the appellants' complaint, Johnson allegedly committed these acts while acting within the scope of her

___

[7] The GTCA defines "state officer of employee" in part as "an officer or employee of the state, elected or appointed officials, law enforcement officers, and persons acting on behalf or in service of the state in any official capacity, whether with or without compensation, but the term does not include an independent contractor doing business with the state." OCGA § 50-21-22 (7). The Act also defines "state" as "the State of Georgia and any of its offices, agencies, authorities, departments, commissions, boards, divisions, instrumentalities, and institutions, but does not include counties, municipalities, school districts, other units of local government, hospital authorities, or housing and other local authorities." OCGA § 50-21-22 (5).

17

employment as Cirrus' superintendent and chief executive officer. Thus, Johnson was entitled to official immunity and the trial court properly dismissed the appellants' claims against Johnson.

4. Lastly, the appellants argue that the trial court erred by dismissing their claim under the Whistleblower Act because they were diligent in serving their complaint. We conclude that the trial court did not err in its determination that the appellants were not diligent in serving their complaint.

"A trial court's exercise of discretion in determining the diligence of a plaintiff in perfecting service after the five-day safe harbor provision of OCGA § 9-11-4 (c) will not be disturbed absent an abuse of discretion." (Citation omitted.) *Scott v. Taylor*, 234 Ga. App. 543 (507 SE2d 798) (1998).

It is a well-settled principle that "the filing a complaint without perfecting service does not constitute a pending suit." (Citation omitted.) *Williams v. Hunter*, 291 Ga. App. 731, 732 (662 SE2d 810) (2008).

> If the filing of the petition is followed by timely service perfected as required by law, although the statute of limitation runs between the date of the filing of the petition and the date of service, the service will relate back to the time of filing so as to avoid the limitation. Therefore, if service is made within the five-day grace period allowed by OCGA § 9-

18

11-4 (c), it relates back to the date the complaint was filed as a mater of law.

(Citations, punctuation, and footnote omitted.) *Giles v. State Farm Mut. Ins. Co.*, 330 Ga. App. 314, 317-318 (2) (765 SE2d 413) (2014). On the other hand, "where a complaint is filed near the statute of limitation and service is made after the statute expires and after the five-day safe harbor provision contained within OCGA § 9-11-4 (c), the relation back of the service to the date of filing is dependent upon the diligence exercised by the plaintiff in perfecting service." (Citation and punctuation omitted.) Id. at 318 (2).

Here, the appellants asserted a claim under the Whistleblower Act against Cirrus. The Whistleblower Act states that "[a] public employee who has been the object of retaliation in violation of this Code section may institute a civil action in superior court for relief . . . within one year after discovering the retaliation or within three years after the retaliation, whichever is earlier." OCGA § 45-1-4 (e) (1). The appellants alleged in their complaint that the retaliatory acts began in November 2016 and ended in April 2017 following their termination. Therefore, the appellants were required to properly file their complaint no later than April 2018. It is true that on February 16, 2018, the appellants filed their whistleblower claim in the same suit as

their claims under the TPAFCA. Because the appellants elected to file their whistleblower claim in the same suit as their claims under the TPAFCA, however, the appellants could not serve the complaint on Cirrus without a court order.[8] See OCGA § 23-3-122 (b) (2). Ultimately, the appellants waited until May 1, 2018 to file the whistleblower claim in a separate suit, and the trial court found that Cirrus was served with that complaint on May 25, 2018. In light of these facts, we find no reversible error in the trial court's determination that the appellants were not diligent in serving their complaint, and therefore their whistleblower claim was properly dismissed. See *Scott*, supra, 234 Ga. App. at 543 (holding that the plaintiff failed to show due diligence in serving a complaint filed one day before the expiration of the statute of limitations and served 32 days later).

In sum, we conclude that the trial court conducted the proper inquiry and did not assume facts outside of the complaint in ruling on the motion to dismiss, that Cirrus was entitled to sovereign immunity, that Johnson was entitled to official immunity, and that the appellants' whistleblower claim was properly dismissed for failure to exercise diligence in service. Accordingly, we affirm the trial court's order granting Cirrus' motion to dismiss.

---

[8] The trial court found that Cirrus was never served with the original complaint.

*Judgment affirmed. Mercier and Brown, JJ., concur.*