[DO NOT PUBLISH]

# In the
# United States Court of Appeals
## For the Eleventh Circuit

————————————————

No. 23-10433

Non-Argument Calendar

————————————————

MICHAEL PALMER,

Plaintiff-Appellant,

*versus*

RICHARD ROBBINS,

JAMES WINSTON,

CHRISTOPHER MCBRIDE,

Defendants-Appellees.

————————————————

Appeal from the United States District Court
for the Southern District of Georgia

D.C. Docket No. 4:19-cv-00167-RSB-CLR

_____

Before JORDAN, BRANCH and DUBINA, Circuit Judges.

PER CURIAM:

Appellant Michael Palmer appeals the district court's order denying his supplemental motion for new trial. While working at Herty Advanced Materials Development Center ("Herty"), Palmer was arrested and charged in a criminal prosecution for allegedly stealing gas from Herty's gas pumps. Herty is a research and development center located in Savannah, Georgia, and a division of Georgia Southern University. Herty installed a surveillance camera at the gas pumps, and it recorded the alleged theft. After authorities dismissed Palmer's criminal prosecution, Palmer filed suit against Richard Robbins, plant manager at Herty, Christopher McBride, Georgia Southern University police officer, and James Winston, a team leader/supervisor at Herty, alleging that they maliciously prosecuted him in violation of his Fourth Amendment rights. The district court granted summary judgment to McBride and Winston based on immunity, and the case proceeded to trial on the sole issue of whether Robbins caused Palmer's criminal prosecution. The jury entered a verdict in favor of Robbins, and the district court denied Palmer's supplemental motion for new trial. After reviewing the record and reading the parties' briefs, we affirm the district court's order.

**I.**

We review for abuse of discretion a district court's order denying a motion for new trial. *Chmielewski v. City of St. Pete Beach*, 890 F.3d 942, 951 (11th Cir. 2018). Because Palmer failed to move for a directed verdict at trial, "our inquiry is limited to whether there was *any* evidence to support the jury's verdict, irrespective of its sufficiency." *Hercaire Int'l, Inc. v. Arg.*, 821 F.2d 559, 562 (11th Cir. 1987) (quotations omitted).

We review *de novo* a district court's order granting summary judgment based on qualified immunity. *See Rowe v. Schreiber*, 139 F.3d 1381, 1383 (11th Cir. 1998).

## II.

We must determine whether we have jurisdiction to review the district court's grant of summary judgment to Officer McBride based on qualified immunity, and to Winston based on state law immunity. Palmer contends that under Federal Rule of Appellate Procedure 3, we do have jurisdiction because the notice of appeal encompasses the district court's grant of summary judgment. Robbins contends that we do not have jurisdiction because the notice of appeal specified only the district court's order on the motion for new trial.

Rule 3 of the Federal Rules of Appellate Procedure provides that the notice of appeal must "designate the judgment — or the appealable order — from which the appeal is taken." F.R.A.P. 3(c)(1). The rule further states in part that the notice of appeal "encompasses all orders that, for purposes of appeal, merge into the designated judgment or appealable order." *Id*. at 3(c)(4). "It is

not necessary to designate those orders in the notice of appeal." *Id.* The rule also provides in part that "a notice of appeal encompasses the final judgment, whether or not that judgment is set out in a separate document under Federal Rule of Civil Procedure 58, if the notice designates: (A) an order that adjudicates all remaining claims and the rights and liabilities of all remaining parties; or (B) an order described in Rule 4(a)(4)(A)." *Id.*at 3(c)(5). Finally, Rule 3(c)(6) provides that "[a]n appellant may designate only part of a judgment or appealable order by expressly stating that the notice of appeal is so limited. Without such an express statement, specific designations do not limit the scope of the notice of appeal." Under the Rule, we conclude that the summary judgment order is encompassed within the appealable order, and we have jurisdiction to review it.

### A. Officer McBride

Palmer asserted a federal malicious prosecution claim against Officer McBride, and Officer McBride moved for summary judgment, arguing that there was no evidence that he caused any seizure of Palmer that violated the Fourth Amendment; that Palmer's arrest was supported by probable cause or, at minimum, arguable probable cause; and that he did not institute or continue the criminal prosecution against Palmer or unduly influence the decision to prosecute. The district court concluded that Palmer did not prove his claim of malicious prosecution, and that Officer McBride was entitled to qualified immunity. Based on our review, we agree with the district court.

To succeed on a claim of malicious prosecution, Palmer must prove a violation of his Fourth Amendment right to be free from unreasonable seizures and the elements of the common law tort of malicious prosecution. *Williams v. Aguirre*, 965 F.3d 1147, 1157 (11th Cir. 2020). These tort elements include "(1) a criminal prosecution instituted or continued by the present defendant; (2) with malice and without probable cause; (3) that terminated in the plaintiff accused's favor; and (4) caused damage to the plaintiff accused." *Wood v. Kesler*, 323 F.3d 872, 882 (11th Cir. 2003). Palmer must also produce evidence to prove that he was seized in violation of his constitutional rights. *See Kingsland v. City of Miami*, 382 F.3d 1220, 1235 (11th Cir. 2004). An arrest is a seizure of the person, and "the reasonableness of an arrest is . . . determined by the presence or absence of probable cause for the arrest." *Skop v. City of Atlanta*, 485 F.3d 1130, 1137 (11th Cir. 2007). Stated differently, "the existence of probable cause" for an arrest warrant "defeats a § 1983 malicious prosecution claim." *Grider v. City of Auburn*, 618 F. 3d 1240, 1256 (11th Cir. 2010).

Moreover, qualified immunity protects government officials performing discretionary functions from personal liability if their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Vinyard v. Wilson*, 311 F.3d 1340, 1346 (11th Cir. 2002) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 2738 (1982)). To rely upon qualified immunity, Officer McBride must show that he acted within his discretionary authority, i.e., he was

"performing a legitimate job-related function . . . through means that were within his power to utilize." *Holloman ex rel. Hollomon v. Harland*, 370 F.3d 1252, 1265 (11th Cir. 2004).   The record demonstrates that Officer McBride was performing a legitimate job function through permissible means when he investigated the gas theft at Herty.

We next consider whether Palmer proved a violation of his constitutional rights by Officer McBride that were clearly established at the time of the incident.  *See Keating v. City of Miami*, 598 F.3d 753, 762 (11th Cir. 2010).  To prove that he was seized in violation of his Fourth Amendment rights, Palmer must establish (1) that the legal process justifying his seizure "was constitutionally infirm;" and (2) "that his seizure would not otherwise be justified without legal process."  *Williams*, 965 F.3d at 1165.  Palmer "can prove that his arrest warrant was constitutionally infirm if he establishes either that the officer who applied for the warrant should have known that his application failed to establish probable cause, or that an official, including an individual who did not apply for the warrant, intentionally or recklessly made misstatements or omissions necessary to support the warrant." *Id.* (internal citations omitted).

We conclude that, based on the record, Palmer did not satisfy his burden of proof.  Contrary to Palmer's assertions, there is no record evidence that Robbins lied to Officer McBride when he identified Palmer in the video, and Palmer admitted in his deposition that there was no evidence that Officer McBride knew

about the lies perpetuated by Robbins. In addition, there is nothing in the record to indicate that Officer McBride made an intentional or reckless misstatement or omission necessary to obtain the arrest warrant. Rather, the record shows that Officer McBride investigated the gasoline theft, created a case file, gave that case file to a police officer, and that officer secured the arrest warrant. There is no evidence that Officer McBride was responsible for the decision to prosecute or arrest Palmer. Thus, Palmer did not show that Officer McBride caused him to be seized in violation of his Fourth Amendment right.

Based on the record, we also conclude that probable cause, or at least, arguable probable cause, existed for the issuance of the arrest warrant and Palmer's arrest. "We have not always consistently articulated the probable-cause standard in the context of arrests." *Washington v. Howard*, 25 F.4th 891, 898 (11th Cir. 2022). Relying on the Supreme Court's explanation, we stated recently that probable cause "exists when the facts, considering the totality of the circumstances and viewed from the perspective of a reasonable officer, establish 'a probability or substantial chance of criminal activity.'" *Id.* (quoting *District of Columbia v. Wesby*, 583 U.S. 48, 57, 138 S. Ct. 577, 586 (2018)). Thus, on review, a court must inquire "whether a reasonable officer *could* conclude . . . that there was a substantial chance of criminal activity." *Id.* at 899 (emphasis added) (quoting *Wesby*, 583 U.S. at 61, 138 S. Ct. at 588). Here, two of Palmer's supervisors, Robbins and Winston, identified Palmer in the video, based on their numerous years working with Palmer, his physical characteristics, the truck he

drove, and his mannerisms. Thus, a reasonable officer, possessing the same information as Officer McBride, could conclude that Robbins and Winston's identifications of Palmer were reliable, and that there was a substantial chance or probability that Palmer was involved in criminal activity. Office McBride himself observed that Palmer drove a truck like the one depicted in the video. Considering the totality of the circumstances, we affirm the district court's grant of summary judgment to Officer McBride.

### B.   James Winston

Palmer alleges a state law malicious prosecution claim against Winston pursuant to O.C.G.A. § 51-7-40, and Winston asserts official immunity pursuant to the Georgia Tort Claims Act, O.C.G.A. § 50-21-20, *et seq*. ("GTCA"). Winston relies on his role as team leader and supervisor to assert that his identification of Palmer was committed within the scope of his employment. The district court found that Winston was entitled to summary judgment based on immunity. Based on our review, we agree with the district court.

Under the GTCA, "[a] state officer or employee who commits a tort while acting within the scope of his or her official duties or employment is not subject to lawsuit or liability." O.C.G.A. § 50-21-25(a). However, the Act does not give a state officer or employee immunity from suit and liability if a plaintiff can prove that the officer or employee's conduct was not within the scope of his or her official duties or employment. *Riddle v. Ashe*, 495 S.E.2d 287, 288 (Ga. 1998). (internal quotation marks omitted).

23-10433                    Opinion of the Court                    9

To determine whether the employee acted within the scope of his authority, the court must examine whether the employee was "performing the regular duties of [his] employment, during [his] regular hours of employment, at [his] regular site of employment. *Shekhawat v. Jones*, 746 S.E.2d 89, 93 (Ga. 2013).

Based on the record, we conclude that the district court properly granted Winston immunity. First, Winston was acting within the scope of his employment when he identified Palmer as the suspect in the video. Winston was the team leader and supervised 12 to 15 Herty employees, including Palmer. Winston was performing his duties during the regular work hours at his normal place of business when he identified Palmer as a suspect. Further, Winston had a duty, pursuant to University policy, to investigate and report any employee misconduct of which he was aware. *See Massey v. Roth*, 290 Ga. App. 496, 499 (Ga. Ct. App. 2008) ("Actions taken by employees to . . . enforce university policies can reasonably be construed as actuated by a purpose to serve the employer, and thus fall within the scope of their employment."). Accordingly, we affirm the district court's grant of summary judgment to Winston on Palmer's state malicious prosecution claim.

## III.

Palmer asserts that the district court abused its discretion in denying his supplemental motion for new trial because the jury's finding that Robbins did not cause Palmer's criminal prosecution was against the clear or great weight of the evidence. *See Hewitt v.*

*B.F. Goodrich Co.*, 732 F.2d 1554, 1556 (11th Cir. 1984). To the contrary, Robbins contends that there was overwhelming evidence to support the jury's verdict. Robbins claims that since he was not a member of law enforcement and directly involved in the decision to arrest or prosecute Palmer, a jury could only find that Robbins caused the criminal prosecution if he engaged in deception or undue pressure regarding the law enforcement personnel who had the authority to arrest or prosecute. *See Barts v. Joyner*, 865 F.2d 1187, 1195 (11th Cir. 1989). Robbins argues that Palmer failed to make such a showing at trial, and we should uphold the jury verdict.

To prevail on a claim of malicious prosecution, Palmer must show that Robbins caused a criminal proceeding to be instituted or continued against him; that Robbins acted with malice and without probable cause; that the proceeding terminated in his favor; that he was unlawfully seized because of the criminal proceeding; that Robbins's conduct caused Palmer's injuries; and that Robbins acted under color of law. *See Paez v. Mulvey*, 915 F.3d 1276, 1285 (11th Cir. 2019). In this case, the jury did not address every element of the malicious prosecution claim because it found that Palmer failed on the first element of causation. A defendant cannot be the legal cause of a prosecution or other criminal proceeding where there is no evidence that the defendant had anything to do with the decision to prosecute or that the defendant had improperly influenced that decision. *See Eubanks v. Gerwen*, 40 F.3d 1157, 1160-61 (11th Cir. 1994). "The intervening acts of the prosecutor, grand jury, judge[,] and jury . . . each break the chain of causation unless

plaintiff can show that these intervening acts were the result of deception or undue pressure by the defendant." *Barts*, 865 F.2d at 1195.

The trial record shows that the jury heard two days of testimony from Robbins, McBride, Winston, and Don McLemore, Robbins's supervisor, and law enforcement personnel. The jury viewed the surveillance tape, which was introduced by Palmer. Robbins described his duties as running the daily operations at Herty. In 2016, he learned that unauthorized gas was missing from Herty's pumps, and he installed a surveillance camera to monitor the gas pump area. Robbins stated that he was able to identify, based on their physical characteristics and the vehicles they drove, three Herty employees stealing gas from the pumps for personal use. Robbins contacted his supervisor, McLemore, who stated that he would contact the University Police Department. Robbins testified that McLemore instructed him to contact Officer McBride, and McLemore corroborated this testimony, stating that it was his decision to involve the police based on his observation of the criminal conduct he saw in the surveillance video.

McBride testified that he personally viewed the surveillance video, and it was obvious to him that the individuals were taking the gas for their own personal use. McBride originally told Robbins and McLemore to handle the matter internally, but McBride's chief later instructed him to conduct a further investigation. McBride then contacted Robbins and asked him to find another witness who could identify the individuals in the video. Robbins asked Winston

to watch the video, which he did, and he clearly identified Palmer and two other individuals. Winston stated that he truthfully identified the three individuals, and he was not pressured to identify a specific individual. However, Palmer introduced a phone call recording in which Winston told Palmer that he felt he was being used by Robbins. Winston explained at trial that his statements on the phone were made in anger because he did not want to be involved in the investigation, and he felt he was being used in an inappropriate manner.

McBride further testified that he asked Robbins to arrange a meeting with Palmer and the other two suspects. While he was at Herty for the meeting, McBride noticed the three vehicles driven by the suspects appeared to be the same three vehicles he saw in the surveillance video. McBride identified the vehicles based on their color, make and model. McBride stated that his chief instructed him to secure arrest warrants for the suspects because the Georgia Southern University's administration wanted to pursue criminal charges. McBride then contacted the Savannah-Chatham Metro Police Department and sent the case file to Sergeant Joe Lewis to review, and his department issued the arrest warrants. Thus, neither Robbins, McBride, nor Winston procured the arrest warrants for Palmer and the other two suspects.

The record demonstrates that the district court did not err in denying Palmer's supplemental motion for new trial. The trial testimony demonstrates that Robbins identified Palmer as a suspect in the theft, the intervening acts of McLemore, McBride,

and the Savannah-Chatham police broke the causal chain, and that Robbins had no authority or intention to have Palmer prosecuted criminally. McBride's testimony showed that law enforcement independently analyzed the facts and required other pieces of evidence apart from Robbins's identification in deciding to pursue criminal charges against Palmer. Apparently, the jury found McBride and Winston credible, and it is not within the court's discretion to overturn the jury's determination on issues of credibility. Palmer failed to prove that Robbins's identification of him was the legal cause of his criminal prosecution. Accordingly, based on the aforementioned reasons, we affirm the district court's order denying Palmer's supplemental motion for a new trial on his claim of malicious prosecution.

**AFFIRMED.**